## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF WEST VIRGINIA
## MARTINSBURG

**DAVID KNISELY,**

        Plaintiff,

**v.**                                     **CIVIL ACTION NO: 3:14-CV-15**
                                           **(JUDGE GROH)**

**NATIONAL BETTER LIVING**
**ASSOCIATION, INC., AMERICAN MEDICAL**
**AND LIFE INSURANCE COMPANY, and**
**JOHN/JANE DOES,**

        Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING IN PART NATIONAL BETTER LIVING ASSOCIATION, INC.'S MOTION TO DISMISS, GRANTING IN PART AMERICAN MEDICAL AND LIFE INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS, AND DENYING PLAINTIFF'S MOTION TO AMEND

      Currently pending before the Court are Defendant National Better Living Association,

Inc.'s ("NBLA") Motion to Dismiss brought pursuant to Federal Rules of Civil Procedure

12(b)(2) and 12(b)(6) [Doc. 21], Defendant American Medical and Life Insurance

Company's ("AMLI") Motion for Judgment on the Pleadings [Doc. 40], and the Plaintiff's

Motion to Amend his complaint raised in the event the Court dismisses any portion of his

complaint.  Having considered these motions and the parties' arguments, the Court

**GRANTS IN PART** NBLA's Motion to Dismiss, **GRANTS** NBLA leave to brief its Rule

12(b)(2) motion, **GRANTS IN PART** AMLI's Motion for Judgment on the Pleadings, and

**DENIES** the Plaintiff's Motion to Amend.

# I. BACKGROUND

### 1. Factual Allegations[1]

NBLA is a national membership association that provides group benefits. Compl. ¶ 5. AMLI is an insurer that issued a group health insurance policy for NBLA's members. Id. ¶¶ 6, 11. The policy provides limited medical benefits. Id. ¶ 13. NBLA and/or AMLI contracted with John Doe 1 to market and sell AMLI's health insurance policy to NBLA's members. Id. ¶ 7. With NBLA and AMLI's knowledge, John Doe 1 represented that the policy offered comprehensive medical coverage when it did not. Id. ¶ 13. For example, the policy excluded pre-existing conditions, but was advertised as covering them. Id. ¶¶ 13, 41, 44-45.

NBLA, AMLI, and John Doe 1 allegedly interacted as follows. NBLA advertised that it offered reasonable quotes on comprehensive health insurance policies. Id. ¶ 15. When a potential customer called NBLA, she was connected with John Doe 1's call center representatives. Id. John Doe 1's agent would make statements representing the AMLI policy provided comprehensive medical coverage. Id. A caller who chose to purchase the policy would provide her personal information to the representative. Id. The call would then be transferred to an AMLI agent who recited "confusing and incomprehensible disclaimers." Id.

NBLA, AMLI, and John Doe 1 denied, delayed, and underpaid claims brought under the AMLI policy. Id. ¶ 22. They did so by disguising who was responsible for responding to claims, routinely denying claims, misapplying the pre-existing limitation, misusing billing

---

[1] This section assumes the facts alleged in the complaint are true and construes those facts in the light most favorable to the Plaintiff.

and diagnosis coding information to misclassify claims as excluded or subject to payment limitations, delaying responses to claims, denying that plan members were members, and stating that timely claims were late.  Id.  These actions have led to "hundreds of consumer complaints" and civil and administrative actions in Alaska, Arkansas, Florida, Georgia, Kentucky, Maine, Maryland, Montana, New York, Wisconsin, and Utah.  Id. ¶¶ 23-36.

In 2011, Plaintiff David Knisely purchased the AMLI policy through NBLA.  Id. ¶ 47.  He moved to Harpers Ferry, West Virginia and lived there with his brother and Don Mock, a family friend.  Id. ¶¶ 38-39.  Having lost his job, the Plaintiff maintained health insurance from a former employer through COBRA, but the premiums were high.  Id. ¶ 40. As such, he began searching for a new health insurance policy that would cover his pre-existing conditions.  Id. ¶ 41.

In early 2011, the Plaintiff contacted Jane Doe 2 (an employee or agent of NBLA or John Doe 1) to inquire about insurance coverage.  Id. ¶¶ 42-43.  She attempted to sell the Plaintiff AMLI's group health insurance plan.  Id.  The Plaintiff discussed his pre-existing medical conditions with Jane Doe 2.  Id. ¶ 44.  She told the Plaintiff that the plan covered pre-existing conditions, doctor visits, medications, outpatient procedures, and lab work.  Id. ¶ 45.  Jane Doe 2 also stated that the Plaintiff could cancel the plan within thirty days of enrolling for any reason.  Id. ¶ 46.  The Plaintiff decided to enroll in NBLA's group plan.  Id. ¶ 47.  Mr. Mock granted the Plaintiff permission to use his bank card to pay the plan's activation fee.  Id. ¶ 48.  The Plaintiff told Jane Doe 2 to use Mr. Mock's account only for the activation fee and to bill him for subsequent payments.  Id. ¶ 49.  Jane Doe 2 agreed to this arrangement.  Id.

Thereafter, the Plaintiff received the policy's plan materials in the mail.  Id. ¶ 50.  The

Plaintiff discovered through these materials that Jane Doe 2's statements about the plan were false.  Id.  For example, the plan did not cover his medications.  Id.  In May 2011, within the cancellation period, the Plaintiff called NBLA and spoke with John Doe 3.  Id. ¶¶ 51, 59.  He told John Doe 3 that he was canceling his coverage.  Id.  John Doe 3 stated that the Plaintiff's coverage was canceled, effective immediately.  Id. ¶ 52.  Neither NBLA nor AMLI communicated with the Plaintiff after that point.  Id. ¶ 53.

On approximately February 23, 2012, the Plaintiff was hospitalized for an allergic reaction to medication he took for a chronic medical condition.  Id. ¶ 55.  He then contracted MRSA in the hospital.  Id.  He was discharged on April 11, 2012.  Id.  This hospital stay resulted in medical bills exceeding $60,000.  Id. ¶ 56.

In late 2012, Mr. Mock told the Plaintiff he had discovered that, over an eighteen-month period, NBLA had withdrawn thousands of dollars from his bank account.  Id. ¶ 57.  The Plaintiff contacted NBLA and spoke with an individual who identified herself as Ms. Smith.  Id. ¶ 58.  The Plaintiff told Ms. Smith that he had canceled his policy and had not authorized additional deductions from Mr. Mock's bank account.  Id. ¶ 59.  Ms. Smith stated that his membership had not been canceled.  Id. ¶ 60.  The Plaintiff demanded that NBLA either refund the money deducted from Mr. Mock's account or pay his medical bills. Id. ¶ 61.  Ms. Smith denied the Plaintiff's claim on the basis that he did not timely submit it and did not report it to the proper entity, AMLI.  Id. ¶ 62.  In December 2012, after the Plaintiff's conversation with Ms. Smith, NBLA sent the Plaintiff insurance cards.  Id. ¶ 63. The Plaintiff canceled his NBLA membership in January 2013.  Id. ¶ 64.

In May 2013, the Plaintiff's counsel contacted Ms. Smith concerning the NBLA membership.  Id. ¶ 65.  NBLA's counsel wrote to the Plaintiff's counsel on May 14, 2013.

Id. ¶ 66. His letter stated, among other things, that NBLA did "not have a record of a medical claim being filed with AMLI." Compl. Ex. O; id. On May 28, 2013, the Plaintiff's counsel sent a letter to NBLA's counsel, disputing NBLA's counsel's representations of their conversation and requesting information about NBLA and AMLI. Compl. ¶ 67; Compl. Ex. P. Meanwhile, on May 23, 2013, the Plaintiff's counsel contacted AMLI to discuss the Plaintiff's claim. Compl. ¶ 68; Compl. Ex. Q. AMLI stated it could not do so without a HIPAA authorization from the Plaintiff. Compl. ¶ 68. The Plaintiff provided AMLI with this authorization. Id. ¶ 69. His counsel then gave AMLI bills and records from the Plaintiff's hospitalization and requested that AMLI reimburse the Plaintiff for all charges. Id. AMLI never contacted the Plaintiff regarding his claim. Id.

### 2. Procedural History

Based on the foregoing allegations, on December 12, 2013, the Plaintiff initiated this case against NBLA, AMLI, and John/Jane Does in West Virginia state court. His complaint raises the following claims: (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO Act") under 18 U.S.C. § 1962(c) and (d) against all Defendants; (2) violations of the West Virginia Unfair Trade Practices Act ("WVUTPA") under West Virginia Code § 33-11-4 against all Defendants; (3) violations of the Discount Medical Plan Organizations and Discount Prescription Drug Plan Act Organization Act under West Virginia Code § 33-15E-1 against NBLA; (4) bad faith and breach of contract against AMLI; (5) fraud against all Defendants; and (6) unconscionability against all Defendants.

On January 29, 2014, NBLA removed this case to this Court with AMLI's consent. AMLI answered the complaint on February 3, 2014. On February 21, 2014, NBLA moved to dismiss the complaint for lack of personal jurisdiction under Rule 12(b)(2) and for failure

to state a claim upon which relief can be granted under Rule 12(b)(6). NBLA then moved the Court to stay this case pending resolution of its Motion to Dismiss. The Court denied this motion. On April 11, 2014, AMLI filed a Motion for Judgment on the Pleadings. Further, in his responses to the Defendants' motions, the Plaintiff states that, if the Court is inclined to dismiss any part of his complaint, he would request leave to amend it.

## II. STANDARD OF REVIEW

When considering a motion for judgment on the pleadings, a court applies the same standard that it does for a Rule 12(b)(6) motion to dismiss. See Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows a defendant to challenge the complaint's sufficiency in this regard by moving to dismiss a complaint for failing "to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although Rule 8's pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancements.'" Id. (quoting Twombly, 550 U.S. at 555, 557).

When reviewing a Rule 12(b)(6) motion, a court must assume that the complaint's well-pleaded allegations are true, resolve all doubts and inferences in favor of the plaintiff,

6

and view the allegations in a light most favorable to the plaintiff. Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999). Only factual allegations are entitled to the presumption of truth. See Iqbal, 556 U.S. at 678-79. A court may also consider facts derived from sources beyond the four corners of the complaint, including documents attached to the complaint, documents attached to the motion to dismiss "so long as they are integral to the complaint and authentic," and facts subject to judicial notice under Federal Rule of Evidence 201. Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

## III. ANALYSIS

### 1. RICO Act Claims

Under the RICO Act, if a violation of 18 U.S.C. § 1962 injures a person's "business or property," he may bring a private civil action to recover treble damages. 18 U.S.C. § 1964(c). The Plaintiff claims the Defendants violated two provisions of the RICO Act– § 1962(c) and (d). The Defendants seek dismissal of these claims.

#### a. Section 1962(c) Claim

Section 1962(c) of the RICO Act makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To establish a violation of § 1962(c), the Plaintiff must demonstrate: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985).

The Defendants argue that the § 1962(c) fails to allege: (1) the predicate acts of racketeering with particularity; (2) an injury and, alternatively, proximate cause needed to have standing; and (3) an "enterprise." The Court only reaches the first and second arguments because either basis is dispositive.

### i. Predicate Acts

The Plaintiff must allege sufficient predicate acts of racketeering activity. Id. In this case, the Plaintiff alleges that the Defendants committed mail fraud, wire fraud, and bank fraud. "[R]acketeering activity" is any act indictable under certain provisions of the federal criminal code, including 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), and 18 U.S.C. § 1344 (bank fraud). 18 U.S.C. § 1961(1). The Defendants argue that the Plaintiff has not adequately pleaded the predicate acts.

When a plaintiff alleges fraud, he "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Rule 9(b) applies to the pleading of mail, wire, and bank fraud as predicate acts in civil RICO claims. See Proctor v. Metro. Money Store Corp., 645 F. Supp. 2d 464, 473 (D. Md. 2009). The Fourth Circuit has stated that "the circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 785 (4th Cir. 1999) (citation and quotation marks omitted). When multiple defendants are asked to respond to allegations of fraud, "the complaint should inform each defendant of the nature of his alleged participation in the fraud." Bluestone Coal Corp. v. CNX Land Res., Inc., Civil Action No. 1:07-00549, 2007 WL 6641647, at *6

(S.D.W. Va. Nov. 16, 2007) (citing <u>DiVittorio v. Equidyne Extractive Indus., Inc.</u>, 822 F.3d 1242, 1247 (2d Cir. 1987)); <u>see also</u> <u>Juntti v. Prudential-Bache Secs., Inc.</u>, 993 F.2d 228, 1993 WL 138523, at *2 (4th Cir. 1993) (affirming dismissal of complaint because complaint referenced "defendants" generally, not action of specific defendants regarding alleged fraud). A court "should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." <u>Harrison</u>, 176 F.3d at 784.

Because mail and wire fraud have similar elements, the Court will consider bank fraud and then address those predicate acts together. <u>Proctor</u>, 645 F. Supp. 2d at 473.

### a) Bank Fraud

The Plaintiff cannot rely on bank fraud as a predicate act. 18 U.S.C. § 1344 prohibits the knowing execution of "a scheme or artifice (1) to defraud a *financial institution*; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, *a financial institution*, by means of false or fraudulent pretenses, representations, or promises." (emphasis added). The statute's plain terms require that a financial institution was the victim of fraud. <u>Hilgeford v. Nat'l Union Fire Ins. Co. of Pittsburgh</u>, Civil Action No. 3:08-CV-669, 2009 WL 302161, at *6 (E.D. Va. Feb. 6, 2009). That is not true here. The Plaintiff alleges only fraud committed against a person, Mr. Mock. Accordingly, because the complaint does not allege that Defendants defrauded "a financial institution," bank fraud cannot be a predicate act. <u>See</u> <u>id.</u> (holding bank fraud could not be a predicate act because plaintiff was not a financial institution); <u>see also</u> <u>Holmes v. MBNA Am. Bank, N.A.</u>, Civil Action No. 5:05-CV-16, 2007 WL 952017, at

*1 (W.D.N.C. Mar. 27, 2007) (same).

### b) Mail and Wire Fraud

To prove mail or wire fraud, the Plaintiff must establish "(1) a scheme disclosing an intent to defraud; and (2) the use, respectively, of the mails or interstate wires in furtherance of the scheme." Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 233 (4th Cir. 2004) (citing Chisolm v. TranSouth Fin. Corp., 95 F.3d 331, 336 (4th Cir. 1996)). A "'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346. Further, to state a mail or wire fraud claim, "a plaintiff must allege 'specific intent to defraud.'" Bourgeois v. Live Nation Entm't, Inc., __ F. Supp. 2d __, 2014 WL 936841, at *35 (D. Md. Mar. 10, 2014) (quoting United States v. Wynn, 684 F.3d 473, 478 (4th Cir. 2012)).

In this case, the complaint alleges that the Defendants used the United States mail and wires to misrepresent the health insurance policy as providing medical coverage that it did not actually provide. It supports this claims with several factual allegations, including: (1) the Plaintiff's conversation, "[s]ometime in early 2011," with Jane Doe 2 about insurance coverage that led to him purchase the AMLI policy through NBLA; (2) the Plaintiff's receipt of the plan materials after enrolling, realization that the plan did not offer the coverage as represented by Jane Doe 2, and cancellation of the policy in May 2011; and (3) the Plaintiff's conversation with Ms. Smith in 2012 wherein Ms. Smith represented that the policy covered him when he was hospitalized and denied his claim for coverage as untimely and improperly reported.

These allegations, even taken in light of the whole complaint, do not survive the scrutiny required by Rule 9(b). To the Plaintiff's credit, he sufficiently describes the false

representations made concerning the policy as offering comprehensive coverage when it did not actually do so (e.g., it did not cover his medications). The complaint does not, however, sufficiently allege the timing of the misrepresentations made about the policy to give the Defendants adequate notice of his claim. <u>See</u> <u>Harrison</u>, 176 F.3d at 784-85. Rather, it only provides a broad time frame concerning these events–that the Plaintiff's interactions with the scheme began "[s]ometime in early 2011" when he purchased the policy, Compl . ¶ 42, that he canceled the policy in May 2011, and that he spoke with Ms. Smith in 2012. Thus, though a key component of the Plaintiff's case, there is not one specific date concerning the alleged misrepresentations made about the nature of the policy. In addition to the lack of particularity concerning timing, the complaint does not allege how and why any denial of the Plaintiff's claim for hospital expenses involved a misrepresentation. It does not, for example, state why the policy *should* cover those expenses; indeed, there are no details concerning the nature of the claim beyond the allegation that it concerns a hospitalization for an allergic reaction and MRSA. <u>See</u> <u>Hilgeford</u>, 2009 WL 302161, at *6 (finding mail fraud not a basis for RICO claim where plaintiff did not state a cognizable misrepresentation concerning the denial of the insurance claim at issue). Accordingly, because the Plaintiff has not sufficiently alleged the timing of the false representations and the contents of any misrepresentation made concerning a denial of coverage, the Plaintiff's mail and wire fraud allegations do not pass muster under Rule 9(b). <u>Compare</u> <u>Williams v. Equity Holding Corp.</u>, 498 F. Supp. 2d 831, 836-37, 842 & n.10 (E.D. Va. 2007) (finding, in "a close call," mail and wire fraud pled with particularity where plaintiffs gave a broad time line of events that included specific dates for several communications involved in the alleged fraud). Dismissal therefore is necessary because

the Plaintiff has not plausibly stated a predicate offense to sustain a § 1962(c) claim.

## ii. Injury and Proximate Cause

Even if the Plaintiff had sufficiently pleaded the predicate acts, he does not have standing to bring a § 1962(c) claim. The Plaintiff contends that he suffered two injuries: (1) the unauthorized withdrawals from Mr. Mock's account; and (2) the cost of his hospitalization. The Defendants argue that these are not injuries because, respectively, the unauthorized deductions only injured Mr. Mock and the Plaintiff had no expectation of coverage after canceling his policy before his hospitalization. They alternatively argue that the Plaintiff has not demonstrated proximate cause.

To have standing to sue under the RICO Act, the violation of § 1962 must have injured the Plaintiff "in his business or property." 18 U.S.C. § 1964(c). That is, his complaint must plausibly allege that his business or property was injured and that the RICO violation caused that injury. Bailey v. Atl. Auto. Corp., __ F. Supp. 2d __, 2014 WL 204262, at *14 (D. Md. 2014).

The Fourth Circuit Court of Appeals has elaborated on the injury requirement, explaining that, "[i]f a party specifically bargains for a service, is told that the service has been performed, is charged for the service, and does not in fact receive the service," courts should not "inquire into whether the service 'really' had value as a precondition to finding that injury to business or property has occurred." Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc., 262 F.3d 260, 265 (4th Cir. 2001) (citation omitted). As for causation, "[t]he RICO predicate acts must not only be a 'but for' cause of a plaintiff's injury, but the proximate cause of that injury as well." Walters v. McMahen, 684 F.3d 435, 444 (4th Cir. 2012) (citing Hemi Grp., LLC v. City of New York, 559 U.S. 1, 9 (2010)). Proximate cause

requires "some direct relation between the injury asserted and the injurious conduct alleged." Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992). In other words, the Plaintiff's injuries "must 'flow from the commission of the predicate acts.'" Walters, 684 F.3d at 440 (quoting Sedima S.P.R.L., 473 U.S. at 497). However, the "Holmes Court cautioned against an overly expansive view of proximate cause: '[A] plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [is] generally said to stand at too remote a distance to recover.'" Mid Atl. Telecom, Inc. v. Long Distance Servs., Inc., 18 F.3d 260, 262 (4th Cir. 1994) (quoting Holmes, 503 U.S. at 268).

Here, first, any unauthorized deductions from Mr. Mock's bank account did not injure the Plaintiff. The complaint alleges that Mr. Mock allowed the Plaintiff to use his bank account to pay the policy's activation fee. There are no allegations that the Plaintiff must repay Mr. Mock for the withdrawals. Because it was Mr. Mock's funds that were taken and the Plaintiff has not alleged he must reimburse Mr. Mock, it cannot be said that the withdrawals injured the Plaintiff. Therefore, the Plaintiff lacks standing to sue under the RICO Act based on an injury suffered by a third party. See Firestone v. Galbreath, 976 F.2d 279, 285 (6th Cir. 1992) (holding beneficiaries of an estate lacked standing to bring civil RICO claim because "[t]he estate suffered the direct harm; it, not the Family Trust, lost the property").

The expenses that the Plaintiff incurred due to the Defendants' alleged denial of his claim, however, injured the Plaintiff's property interest in the policy. Finding that such expenses are an injury to property is consistent with the reasoning of Potomac Electric Power Co.–i.e., the Plaintiff had an insurance policy and did not get the benefits of that

13

policy. 262 F.3d at 265. The Defendants do not argue otherwise. Rather, without citing any authority, they insist that these expenses did not injure the Plaintiff because the Plaintiff claims that he canceled his policy before his hospitalization. This argument goes more to proximate cause issues that the Court will address next. Moreover, it overlooks that the Plaintiff is basing his RICO Act claims on inconsistent theories of recovery–that the withdrawals from Mr. Mock's account injured him because he canceled his policy in 2011; or that, because his policy was not canceled, the Defendants' refusal to pay his medical bills injured his property interest in the policy's benefits. The Plaintiff can take this approach to pleading his claims. See Fed. R. Civ. P. 8(d)(3) (stating a plaintiff "may state as many separate claims . . . as [he] has, regardless of consistency"). Therefore, although this injury is inconsistent with some of the complaint's allegations, the Plaintiff can still rely on it to bring a § 1962(c) claim.

However, the Plaintiff has not alleged facts establishing that the alleged mail and wire fraud proximately caused his injury.[2] The denial of coverage injury centers on the nature of the policy and the claim made. There are no facts showing that the alleged denial of coverage was fraudulent. The complaint does not state the details of the claim submitted for coverage under the policy, the provisions of the policy that entitle him to such coverage, or that the Defendants made any misrepresentations about the policy when handling his claim. Without such information, it is impossible to discern whether the Defendants engaged in any fraudulent scheme to deny the Plaintiff coverage–let alone that there is a relationship between the Plaintiff's alleged entitlement to policy benefits and any

_____

[2] As noted earlier, bank fraud cannot be a predicate act because none of the alleged fraud was committed upon a financial institution.

of the predicate acts.  Accordingly, the Court also must dismiss the § 1962(c) claim for lack of standing.  See Holmes, 503 U.S. at 268.

### b. Section 1962(d) Claim

The Defendants also argue that the Court should dismiss the RICO conspiracy claim brought under § 1962(d).  Because the complaint does not state a § 1962(c) RICO claim, the Court must dismiss this claim.  GE Inv. Private Placement Partners II v. Parker, 247 F.3d 543, 551 n.2 (4th Cir. 2001).

### 2. NBLA's Motion to Dismiss for Lack of Personal Jurisdiction

A defendant challenges personal jurisdiction through a Rule 12(b)(2) motion.  In the Fourth Circuit, however, "service of process on a RICO defendant in a judicial district where that defendant resides establishes personal jurisdiction, provided that the assertion of jurisdiction comports with due process."  Swarey v. Desert Capital REIT, Inc., Civil Action No. DKC 11-3615, 2012 WL 4208057, at *7 (D. Md. Sept. 20, 2012) (citing ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 626 (4th Cir. 1997)).  NBLA acknowledges that this principle renders it subject to personal jurisdiction given the RICO claims, but requests leave to challenge personal jurisdiction if the Court dismisses the RICO claims.  Now that the Court has done so, the question arises whether the Court has personal jurisdiction over NBLA absent the RICO claims.  See D'Addario v. Geller, 264 F. Supp. 2d 367, 387-88 (E.D. Va. 2003) (stating that, if the court dismissed the RICO claim that provided pendent personal jurisdiction, "the state claims against that defendant would also have to be dismissed, unless another basis for asserting personal jurisdiction exists"); see also Taylor v. Bettis, 976 F. Supp. 2d 721, 751 (E.D.N.C. 2013).  Accordingly, to determine whether

there is a basis for personal jurisdiction over NBLA absent the RICO claims, the Court will grant leave to brief this issue and deny the remainder of NBLA's motion to dismiss with leave to refile pending the outcome of the Rule 12(b)(2) motion.

### 3. AMLI's Motion for Judgment on the Pleadings

The Court will now consider the remainder of AMLI's Motion for Judgment on the Pleadings.

#### a. WVUTPA Violations

The WVUTPA prohibits a person from engaging "in any trade practice which is defined in this article as . . . an unfair method of competition or an unfair or deceptive act or practice in the business of insurance." W. Va. Code. § 33-11-3. West Virginia recognizes an implied private cause of action for violations of the WVUTPA brought pursuant to § 33-11-4(9). Syl. Pt. 2, Jenkins v. J.C. Penney Cas. Ins. Co., 280 S.E.2d 252, 253 (W. Va. 1981), overruled on other grounds, State ex rel. State Farm Fire & Cas. Co. v. Madden, 451 S.E.2d 721 (W. Va. 1994). The Plaintiff alleges the following WVUTPA violations:

1. West Virginia Code § 33-11-4(1)(a) and (e) "by misrepresenting pertinent facts and policy provisions." Compl. ¶ 87.

2. West Virginia Code § 33-11-4(2) by falsely advertising the policy and disseminating false information about the policy. Compl. ¶ 88.

3. West Virginia Code § 33-11-4(9)(a) "by misrepresenting pertinent facts and insurance policy provisions relating to the Plaintiff's insurance coverage." Compl. ¶ 89.

4. West Virginia Code § 33-11-4(9)(b) "by failing to acknowledge and act reasonably promptly upon communication with respect to claims arising under insurance policies." Compl. ¶ 90.

5. West Virginia Code § 33-11-4(9)(b) "by failing to adopt and implement

reasonable standards for the prompt investigation of claims arising under insurance policies." Compl. ¶ 91.

6. West Virginia Code § 33-11-4(9)(d) "by refusing to pay claims without conducting a reasonable investigation based upon all available information." Compl. ¶ 92.

7. West Virginia Code of State Rules § 114-14-4 "[b]y failing to disclose and by concealing provisions of the 'benefit plan' along with multiple coercive statements as time limits for notification of claims." Compl. ¶ 93.

AMLI argues that the Plaintiff's WVUTPA claims fail because: (1) the statute of limitations bars them; (2) the complaint does not plead a cognizable injury; and (3) the complaint does not plead a general business practice as § 33-11-4(9) requires.

### i. Statute of Limitations

The Court applies the West Virginia statute of limitations and West Virginia law construing it. Wade v. Danek Med., Inc., 182 F.3d 281, 289 (4th Cir. 1999) (holding that district courts should apply the state statute of limitations and any rule constituting "an integral part" of it). In Dunn v. Rockwell, 689 S.E.2d 255 (W. Va. 2009), the Supreme Court of Appeals of West Virginia explained that courts should conduct a five-step analysis to determine whether the statute of limitations bars a cause of action.

First, the Court must "identify the applicable statute of limitation." Id. at 265. Here, WVUTPA claims have a one-year statute of limitations. Syl. Pt. 1, Wilt v. State Auto. Mut. Ins. Co., 506 S.E.2d 608, 608 (W. Va. 1998).

Second, the Court "should identify when the requisite elements of the cause of action occurred." Dunn, 689 S.E.2d at 265. Third, the Court must determine whether the discovery rule should apply using the criteria set forth in Syllabus Point 4 of Gaither v. City

Hosp., Inc., 487 S.E.2d 901 (W. Va. 1997). Id. Syllabus Point 4 of Gaither provides:

> In tort actions . . . under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

"[W]hether a plaintiff 'knows of' or 'discovered' a cause of action is an objective test. The plaintiff is charged with knowledge of the factual, rather than the legal, basis for the action. This objective test focuses upon whether a reasonable prudent person would have known, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action." Syl. Pt. 4, Dunn, 689 S.E.2d at 258. Further, "[w]here a plaintiff knows of his injury, and the facts surrounding that injury place him on notice of the possible breach of a duty of care, that plaintiff has an affirmative duty to further and fully investigate the facts surrounding that potential breach." McCoy v. Miller, 578 S.E.2d 355, 359 (W. Va. 2003). Fourth, if the court finds that "the plaintiff is not entitled to the benefit of the discovery rule," it then "determine[s] whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action." Dunn, 689 S.E.2d at 265. Fifth, the court determines whether "some other tolling doctrine" arrests the statute of limitation period. Id.

Because the WVUPTA claims arise from different factual allegations–the representations made about the policy and the handling of the Plaintiff's claim–the Court will address the application of the statute of limitations to each set of facts in turn.

### a) Policy Representations

West Virginia Code § 33-11-4 pertinently provides:

(1) *Misrepresentation and false advertising of insurance policies.* – No person shall make, issue, circulate, or cause to be made, issued or circulated, any estimate, circular, statement, sales presentation, omission or comparison which:

(a) Misrepresents the benefits, advantages, conditions or terms of any insurance policy; or

. . .

(e) Uses any name or title of any insurance policy or class of insurance policies misrepresenting the true nature thereof;

. . .

(2) *False information and advertising generally.* – No person shall make, publish, disseminate, circulate or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated or placed before the public, in a newspaper, magazine or other publication, or in the form of a notice, circular, pamphlet, letter or poster or over any radio or television station, or in any other way, an advertisement, announcement or statement containing any assertion, representation or statement with respect to the business of insurance or with respect to any person in the conduct of his or her insurance business, which is untrue, deceptive or misleading.

W. Va. Code. § 33-11-4(1)(a), (1)(e), (2). Because § 33-11-4(1)(a), (1)(e), and (2) all prohibit misrepresentations made about the nature of an insurance policy, the Court will apply the <u>Dunn</u> factors to these claims based on the allegations concerning the representations that the Defendants made about the policy.

First, the requisite elements of these claims occurred in 2011. <u>See</u> <u>Dunn</u>, 689 S.E.2d at 265. The Plaintiff contacted Jane Doe 2 in early 2011. Jane Doe 2 allegedly misrepresented the AMLI policy offered as offering comprehensive health care coverage. The Plaintiff then received plan materials in the mail. He discovered through those materials that Jane Doe 2's statements were false. In May 2011, after receiving the materials, the Plaintiff called NBLA to cancel his policy.

Applying the discovery rule, the Plaintiff knew or should have known of the alleged § 33-11-4(1)(a), (1)(e), and (2) violations no later than when he reviewed the plan materials. As for § 33-11-4(1)(a), the Plaintiff admits that he realized Jane Doe 2 misrepresented the benefits of AMLI's policy when he read the plan materials. At that same time, based on the plan materials, he knew or should have known that the policy's name or title did not reflect the true nature of the policy (i.e., the limited benefits offered), the basis of a § 33-11-4(1)(e) violation. Last, considering § 33-11-4(2), the Plaintiff knew or should have known that any advertisements about the policy were "untrue, deceptive or misleading" when he discovered through the plan materials that the policy's benefits did not conform with what had been represented about the policy.[3]

The Plaintiff urges that the statute of limitations began to run in May 2013 when he submitted a claim to AMLI through counsel. This argument fails to recognize that he bases these violations on events distinct from those related to AMLI's handling of his claim. There are no allegations that any misrepresentations about the policy's nature occurred when AMLI handled the claim. Thus, at the latest, the statute of limitations began to run as to the § 33-11-4(1)(a), (1)(e), and (2) claims in 2011.

The Court must now consider whether AMLI "fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action." Dunn, 689 S.E.2d at 265. The Plaintiff has not argued that AMLI did so in his responses or complaint. Thus, fraudulent concealment does not apply.

Last, the Court must determine whether "some other tolling doctrine" applies. Id.

---

[3] Though the Court analyzes this claim for timeliness, the Court notes that the complaint is devoid of any allegations concerning when, if at all, the Plaintiff saw an advertisement that would trigger § 33-11-4(2).

The Plaintiff has not referenced another tolling doctrine in his complaint or response to AMLI's motion. Thus, this step does not apply.

In light of the <u>Dunn</u> analysis, the one-year statute of limitations bars the Plaintiff's WVUTPA claims brought under § 33-11-4(1)(a), (1)(e) and (2). <u>See</u> Syl. Pt. 1, <u>Wilt</u>, 506 S.E.2d at 608. Giving the Plaintiff the benefit of the discovery rule, the statute of limitations began to run sometime in 2011. The Plaintiff filed this case on December 12, 2013–more than one year after 2011. Accordingly, the Court grants AMLI's motion for judgment on these claims because they are untimely.[4]

### b) Claim Handling

The Court now turns to the WVUPTA claims based on § 33-11-4(9)(a), (b), and (d) and Rule § 114-14-4 because they all relate to AMLI's handling of the Plaintiff's claim. The Defendant argues that these claims are untimely because the statute of limitations began to run in 2011 when the Plaintiff canceled the policy. Like before, the Plaintiff counters that the statute of limitations began to run in May 2013 when his counsel submitted his claim to AMLI.

West Virginia Code § 33-11-4(9) pertinently provides:

(9) *Unfair claim settlement practices.* – No person shall commit or perform with such frequency as to indicate a general business practice any of the following:

(a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

---

[4] Although these claims are untimely, it is questionable whether West Virginia recognizes them because <u>Jenkins</u> held only that § 33-11-4(9) claims are cognizable.

. . .

(d) Refusing to pay claims without conducting a reasonable investigation based upon all available information[.]

Rule § 114-14-4 provides:

4.1. Failure to disclose pertinent policy provisions.

No person may knowingly fail to fully disclose to first-party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented.

4.2. Concealment of pertinent policy provisions.

No person may knowingly conceal from first-party claimants benefits, coverages or other provisions of any insurance policy or insurance contract when such benefits, coverages or other provisions are pertinent to a claim.

4.3. Coercive statements.

No person may make statements which indicate that the rights of a claimant may be impaired if a form or release is not completed within a given period of time unless the statement is given for the purpose of notifying the claimant of the provisions of a statute of limitation or of a policy or contract time limit.

4.4. Time limit for notification of claim.

Except where a time limit is specified by statute or legislative rule, no insurer may require a first-party claimant to give notification of a claim or proof of claim within a specified time.

4.5. Releases.

a. No person may ask a first-party claimant to sign a release that extends beyond the subject matter which gave rise to the claim payment.

b. No insurer may issue any check or draft, in partial settlement of a loss or claim under a specific coverage, that contains language which releases the insurer or its insured from its total liability.

Again considering the second Dunn factor, the elements of these claims occurred

by May 2013. See Dunn, 689 S.E.2d at 265. As section 33-11-4(9)'s title–"[u]nfair claim

settlement practices"–reveals, subsections (a), (b), and (d) prohibit certain claims handling practices. Cumulative of the violations listed in § 33-11-4(9), Rule § 114-14-4 also addresses claim handling. <u>Am. Safety Indem. Co. v. Stollings Trucking Co.</u>, Civil Action No. 204-0752, 2007 WL 2220589, at *8 (S.D.W. Va. July 30, 2007) (stating that West Virginia Code of State Rules are cumulative of § 33-11-4(9) violations and therefore help inform the scope of such violations). Because these WVUTPA claims all relate to AMLI's handling of the Plaintiff's claim, their elements occurred, at the earliest, in May 2013 when the Plaintiff's counsel submitted his claim to AMLI. <u>See</u> Compl. ¶¶ 68-69.

Having found that the statute of limitations began to run in May 2013, the Court need not consider whether the discovery rule, fraudulent concealment, or another tolling doctrine applies because the Plaintiff initiated this case less than one year after he submitted his claim to AMLI. Accordingly, the WVUTPA claim based on violations of § 33-11-4(9) and Rule § 114-14-4 is timely.

### ii. Cognizable Injury

AMLI also contends that the Plaintiff has not shown that the WVUPTA violations injured him because he had no expectation of insurance coverage after canceling his coverage in 2011, a third party paid the policy premiums, and he did not incur expenses that he expected the policy covered.

The Supreme Court of Appeals of West Virginia has consistently found that WVUTPA actions sound in tort rather than contract. <u>Kenney v. Indep. Order of Foresters</u>, 744 F.3d 901, 903 (4th Cir. 2014); <u>see also</u> <u>McCormick v. Allstate Ins. Co.</u>, 475 S.E.2d 507, 519 (W. Va. 1996) (explaining that a WVUTPA claim is distinct from a breach of contract claim). As such, West Virginia recognizes WVUTPA claims based solely on unfair

settlement practices; that is, the resolution of the claim and terms of the policy have no bearing on a WVUTPA claim's viability.  Kenney, 744 F.3d at 906, 911 (explaining that plaintiff could predicate her claim on the bad-faith handling of the claim itself) (citing Wilt , 506 S.E.2d at 609).

Here, the Plaintiff has adequately pleaded an injury.  As the Fourth Circuit explained in Kenney, the mishandling of a claim alone gives rise to a WVUTPA claim.  Id. at 906. That is precisely what the Plaintiff alleges–that he submitted a claim to AMLI and AMLI mishandled it.  The Plaintiff's expectations of coverage and the individual who paid the premiums of the policy are of no consequence to whether AMLI violated § 33-11-4(9). Accordingly, the Court rejects AMLI's argument that the Plaintiff lacks the injury necessary to bring a § 33-11-4(9) claim.

### iii. General Business Practice

AMLI finally argues that the § 33-11-4(9) claims fail because the Plaintiff has not plausibly shown that the WVUTPA violations evidence a general business practice.

To establish a cause of action under § 33-11-4(9), the Plaintiff "must demonstrate that the insurer (1) violated the WVUTPA in the handling of the claimant's claim and (2) that the insurer committed violations of the WVUTPA with such frequency as to indicate a general business practice."  Holloman v. Nationwide Mut. Ins. Co., 617 S.E.2d 816, 823 (W. Va. 2005).  The "general business practice" must have existed "*at the time* the claim at issue was handled."  Id. at 823.  "More than a single isolated violation of [§] 33-11-4(9), must be shown in order to meet the statutory requirement of an indication of 'a general business practice' . . . ."  Syl. Pt. 3, Dodrill v. Nationwide Mut. Ins. Co., 491 S.E.2d 1, 3 (W. Va. 1996) (citation omitted).  The Supreme Court of Appeals of West Virginia explained

how a single insurance claim can satisfy this requirement in Syllabus Point 4 of Dodrill:

> To maintain a private action based upon alleged violations of . . .
> § 33–11–4(9) in the settlement of a single insurance claim, the evidence
> should establish that the conduct in question constitutes more than a single
> violation of . . . § 33–11–4(9), that the violations arise from separate, discrete
> acts or omissions in the claim settlement, and that they arise from a habit,
> custom, usage, or business policy of the insurer, so that, viewing the conduct
> as a whole, the finder of fact is able to conclude that the practice or practices
> are sufficiently pervasive or sufficiently sanctioned by the insurance company
> that the conduct can be considered a "general business practice" and can be
> distinguished by fair minds from an isolated event.

Additionally, the plaintiff can obtain "[p]roof of other violations by the same insurance company to establish the frequency issue . . . from other claimants and attorneys who have dealt with such company and its claims agents, or from any person who is familiar with the company's general business practice in regard to claim settlement." Jenkins, 280 S.E.2d at 260.

Here, the complaint supports the general business practice element with enough facts. It alleges that, after receiving the Plaintiff's bills and records in May 2013, AMLI never contacted the Plaintiff concerning his claim. This omission tends to show a violation of subsections (b) and (d). Dodrill instructs that this is insufficient to establish a general business practice as violations in a single claim must arise from discrete acts. Syl. Pt. 4, Dodrill, 491 S.E.2d at 3. Paragraph 22 of the complaint, however, alleges numerous facts showing that AMLI violated § 33-11-4(9) when handling other claims. For example, it states that the Defendants "singl[ed] out and misus[ed] billing and diagnosis code information to mis-classify claims as either excluded or subject to significant payment limitations under the policy" and that the Defendants delayed responding "to claims and policyholder calls for weeks." Compl. ¶ 22. Taking together the allegations concerning the handling of

Plaintiff's claim and other policy holders' claims, the Plaintiff has plausibly pleaded that AMLI violated 33-11-4(9) as a general business practice.

AMLI also contends that the Plaintiff has not specified which violations of § 33-11-4(9) are attributed to it. The complaint, however, implicates AMLI in all of the alleged claims handling violations as it alleges NBLA, AMLI, and John Doe 1 worked together to deny, underpay, or delay payment of claims brought under the AMLI policy. See Compl. ¶¶ 9, 11-13, 20-21.

Having rejected AMLI's arguments for dismissal of the WVUPTA claim based on § 33-11-4(9), the Court denies AMLI's motion as to that claim.

### b. Bad Faith and Breach of Contract

Next, AMLI argues that the bad faith and breach of contract claim fails because the Plaintiff has not sufficiently pleaded that AMLI breached its obligations under the insurance policy. The Plaintiff counters that he has done so because he alleges that AMLI did not investigate his claim or pay any benefits due under the policy.

Initially, to the extent that the Plaintiff seeks to bring a separate claim based on breach of a duty of good faith and fair dealing, West Virginia does not recognize a standalone cause of action for good faith. See Stand Energy Corp. v. Columbia Gas Transmission Corp., 373 F. Supp. 2d 631, 644 (S.D.W. Va. 2005), cited with approval in, Highmark W. Va., Inc. v. Jamie, 655 S.E.2d 509, 514 (W. Va. 2007). Rather, the good faith claim is subsumed in the breach of contract claim. Id. Therefore, the Court will consider whether the Plaintiff has stated a claim for breach of contract and dismiss any claim based on breach of a duty of good faith and fair dealing.

To state a breach of contract claim, a complaint must allege "'the breach on which the plaintiffs found their action . . . [and] the facts and circumstances which entitle them to damages.'" <u>Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.</u>, 681 F. Supp. 2d 694, 714 (S.D.W. Va. 2009) (quoting <u>White v. Romans</u>, 3 S.E. 14, 16 (W. Va. 1887)).  It is well-established that this claim has the following elements: (1) "the existence of a valid, enforceable contract;" (2) "that the plaintiff has performed under the contract;" (3) "that the defendant has breached or violated its duties or obligations under the contract; and" (4) "that the plaintiff has been injured as a result."  <u>Id.</u> (citing 23 Williston on Contracts § 63:1 (Richard A. Lord, ed. 4th ed. West 2009)); <u>see also</u> <u>Harper v. Consol. Bus. Lines</u>, 185 S.E. 185, 225-26 (W. Va. 1936) (finding complaint stated breach of contract claim where it alleged existence of a contract, satisfaction of conditions precedent, conduct constituting breach, and damages).

Here, the Plaintiff has not stated sufficient facts showing that AMLI breached its obligations under the policy.  The complaint alleges that, from February 23, 2012 until April 11, 2012, the Plaintiff was hospitalized for an allergic reaction and MRSA, leading to $60,000 in medical bills.  It does not, however, allege any details concerning the expenses the Plaintiff submitted to AMLI.  Rather, the complaint simply states that "AMLI was presented with Plaintiff's insurance claim."  Compl. ¶ 114.  The remainder of the complaint does not reveal more information about the claim.  For example, in the facts section, the complaint states only that the Plaintiff's counsel gave "AMLI numerous bills and records and requested reimbursement for all charges."  Compl. ¶ 69.  More facts concerning the expenses claimed are needed to discern which, if any, provision of the policy covered those expenses.  Even if the Plaintiff had provided more facts concerning the claimed expenses,

AMLI's obligations under the policy that pertain to his claim are unclear because the complaint does not allege which provisions of the policy cover his expenses. The absence of more information concerning the expenses claimed and the policy provisions that apply to those expenses is fatal because AMLI did not breach the policy if it did not cover a claim that the policy did not cover. In short, there is no plausible basis for finding that AMLI breached the policy without facts to discern the policy obligations at issue and the expenses alleged to trigger those obligations. The Plaintiff's claims simply may not have been payable under the policy. Accordingly, because the Plaintiff has not sufficiently alleged which policy provisions were breached and the nature of the claim, the complaint fails to state a plausible breach of contract claim. Koontz v. Wells Fargo, N.A., Civil Action No. 2:10-CV-00864, 2011 WL 1297519, at *7 (S.D.W. Va. Mar. 31, 2011) (stating that only the basis of a breach of contract claim "relate[d] to a specific contractual provision" could support the claim); see also Cincinnati Ins. Co. v. Cost Co., Civil Action No. 5:10CV7, 2010 WL 1902995, at *3 (N.D.W. Va. May 11, 2010) (dismissing breach of contract claim for failure to state a claim where plaintiff neither alleged which provisions were breached nor produced a contract because "the plaintiff's claims as to any duties and obligations [were] speculative"). The Court therefore must dismiss this claim.

### c. Fraud and Unconscionability

AMLI moved for judgment concerning the fraud and unconscionability claims. The Court will deny this portion of the motion as moot because the Plaintiff stated in his response that he is withdrawing these claims as to AMLI.

### 4. Motion for Leave to Amend Complaint

In his responses to the Defendants' motions, the Plaintiff states that, if the Court is "inclined" to dismiss any portion of his complaint, he would request the opportunity to amend his complaint. He has not filed a proposed amended complaint or otherwise indicated how he would amend his complaint.

A "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir.1986). However, "the district court must be able to determine whether 'justice so requires,' and in order to do this, the court must have before it the substance of the proposed amendment." Roskam Baking Co. v. Lanham Mach. Co., 288 F.3d 895, 906 (6th Cir. 2002) (affirming denial of motion for leave to amend complaint where plaintiff failed to supply proposed amended complaint or indicate how the complaint would be amended); see also Swarey, 2012 WL 4208057, at *14. Local Rule of Civil Procedure 15.01 reflects the importance of having the proposed amendment available for review as it requires that a plaintiff support a motion to amend with "a signed copy of the proposed amended pleading."

In a case similar to the one at hand, the court in Swarey denied an "unsupported, cursory request for leave to amend" a civil RICO complaint to meet Rule 9(b)'s particularity standard because the court did not have enough information to assess the amendment for futility. Id. The Swarey plaintiffs requested, in one sentence in their opposition to the defendants' motions to dismiss, that the court allow them to amend their complaint if the

court granted the defendants' motions.  Id.  They did not submit a proposed amended complaint or state the allegations that they sought to add to their complaint.  Id.  At most, the plaintiffs indicated that they sought to plead the RICO predicate acts of mail, bank, and wire fraud with particularity.  Id.  In denying the plaintiffs' request, the court explained that the plaintiffs "fail[ed] to provide a sufficient basis for determining whether an amended complaint would be futile, as it [was] not clear that [the p]laintiffs would, or could, offer any new allegations to alter the conclusion that the purported scheme" met the continuity element of a RICO claim.  Id.

Here, like in Swarey, the Plaintiff has not provided the Court with a proposed amended complaint or stated what allegations he seeks to add to his complaint.  See id. His failure to comply with Local Rule 15.01 alone is a basis for denying his request to amend.  Brunner v. State Farm Fire & Cas. Co., Civil Action No. 5:11CV40, 2012 WL 2358952, at *3 (N.D.W. Va. June 20, 2012) (denying motion to amend complaint for failure to comply with Local Rule 15.01).  Even so, the Court cannot assess the futility of the amendment because the Plaintiff has not even stated which claims he seeks to amend. The Plaintiff's request therefore is even more "unsupported" and "cursory" than that made in Swarey as the Plaintiff has not directed the Court to even one claim that he seeks to supplement.  Accordingly, the Court denies the Plaintiff's request to amend his complaint.

## IV. CONCLUSION

For the foregoing reasons, the Court **ORDERS**:

1.    The Court **GRANTS** NBLA's Motion to Dismiss the RICO claims;

2.    The Court **GRANTS** NBLA leave to file a Rule 12(b)(2) motion to dismiss

concerning whether this Court can exercise personal jurisdiction over it without the RICO claims and **ORDERS** that NBLA must file a Rule 12(b)(2) motion to dismiss by **September 18, 2014**.

3.      The Court **DENIES WITHOUT PREJUDICE** the remainder of NBLA's Rule 12(b)(6) Motion to Dismiss and **GRANTS** NBLA leave to refile the motion if the Court finds that it has personal jurisdiction over NBLA;

4.      The Court **GRANTS IN PART** AMLI's Motion for Judgment on the Pleadings as follows:

   a.      The Court **GRANTS** the motion as to the RICO and Bad Faith and Breach of Contract claims;

   b.      The Court **GRANTS** the motion as to the § 33-11-4(1)(a), (1)(e), and (2) WVUPTA claims and **DENIES** the motion as to the § 33–11–4(9) and Rule § 114-14-4 WVUPTA claims; and

   c.      The Court **DENIES AS MOOT** the motion as to the fraud and unconscionability claims.

5.      The Court **DENIES** the Plaintiff's Motion to Amend his complaint.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record herein.

**DATED:** August 19, 2014

_____
GINA M. GROH
UNITED STATES DISTRICT JUDGE