**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**DAVID KNISELY,**

        **Plaintiff,**

**v.**                              **CIVIL ACTION NO.: 3:14-CV-15
(JUDGE GROH)**

**NATIONAL BETTER LIVING
ASSOCIATION, INC., AMERICAN
MEDICAL AND LIFE INSURANCE
COMPANY, and JOHN/JANE DOES,**

        **Defendants.**

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S THIRD MOTION TO COMPEL DISCOVERY RESPONSES
FROM NATIONAL BETTER LIVING ASSOCIATION, INC. [NBLA] [129]**

**I.  INTRODUCTION**

On February 3, 2015, an evidentiary hearing was held on Plaintiff's Third Motion to

Compel Discovery Responses from National Better Living Association, Inc. (NBLA), filed on

October 21, 2014. ("Pl.'s Mot.," ECF No. 129). Plaintiff David Knisely appeared by counsel,

Laura C. Davis, Esq., in person. Defendant National Better Living Association, Inc. ("NBLA")

appeared by counsel, Eric A. Larson, Esq. and Kaitlin Lane Hillenbrand, Esq., in person.

Defendant American Medical and Life Insurance Company ("AMLI") nor counsel appeared. As

an initial matter, the Court inquired as to whether there was any additional evidence the parties

had to offer and neither party presented additional evidence. The Court then closed the evidentiary

portion of the hearing and proceeded to hear argument. After argument and a review of the record,

the Court makes the following findings of fact and conclusions of law.

## II.    BACKGROUND

Plaintiff initiated this case against NBLA, AMLI and John/Jane Does in West Virginia state court on December 12, 2013.[1] (Compl., ECF No. 6-2). On January 29, 2014, the case was removed to federal court. (Notice of Removal, ECF No. 1). Plaintiff initially alleged that AMLI and NBLA solicited consumers "with pre-existing health conditions to purchase junk insurance on the false assertion that the insurance benefits were comprehensive and covered pre-existing health conditions when the coverage did not."[2] (Pl.'s First Mot. to Compel at 1, ECF No. 46). After having his RICO claims against Defendants dismissed by Judge Groh on August 19, 2014, Plaintiff moved to amend his Complaint and now alleges that NBLA is not the true RICO Defendant, but the RICO Enterprise operated the insurance scheme through Allied Health Benefits, Inc. ("AHB"), CorpSavers Healthcare, Inc. ("CorpSavers") and the companies' owner and directors. (Pl.'s Mot. at 1, ECF No. 129). Plaintiff contends that the for-profit CorpSavers sold "junk insurance" to the public directly before reorganizing its subsidiaries, AHB and NBLA, which then sold insurance and solicited customers. (Id.).

Discovery in this case has been ongoing. On August 14, 2014, Plaintiff filed his First Request for Admissions, Second Set of Interrogatories, and Second Request for Production of Documents to NBLA. (ECF No. 75). On September 18, 2014, Plaintiff NBLA filed its Objections to Plaintiff's First Request for Admissions, Second Set of Interrogatories, and Second Request for Production of Documents. (ECF No. 93; NBLA's Resps. to Pl's Second Set of Disc. Reqs., ECF

---

[1] Plaintiff's complaint raised the following claims: (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO Act") under 18 U.S.C. § 1962(c) and (d) against all Defendants; (2) violations of the West Virginia Unfair Trade Practices Act ("WVUTPA") under West Virginia Code § 33-11-4 against all Defendants; (3) violations of the Discount Medical Plan Organizations and Discount Prescription Drug Plan Act Organization Act under West Virginia Code § 33-15E-1 against NBLA; (4) bad faith and breach of contract against AMLI; (5) fraud against all Defendants; and (6) unconscionability against all Defendants.
[2] For a full recitation of the factual allegations in this case, see Judge Groh's August 19, 2014 Memorandum Opinion and Order Granting in Part NBLA's Motion to Dismiss. (ECF No. 77).

No. 129-4). Plaintiff filed his Third Motion to Compel on October 21, 2014. (Pl.'s Mot., ECF No. 129). On October 24, 2014, Judge Groh entered an Order staying the case until December 22, 2014. (ECF No. 133). NBLA informally supplemented its response to Plaintiff's Request for Production No. 1 on October 27, 2014. (ECF No. 140-1). After the stay was lifted, NBLA filed its Response in Opposition to Plaintiff's Third Motion to Compel on January 7, 2015. ("Def.'s Resp.," ECF No. 134). On January 14, 2014, Plaintiff filed his Reply in Support of his Third Motion to Compel. ("Pl.'s Reply," ECF No. 140).

### III.  CONTENTION OF THE PARTIES

Plaintiff moves to compel supplementation for Requests for Admission Nos. 7, 10, 11, 12 and 25; answers to his Second Set of Interrogatories; and documents responsive to Plaintiff's Second Set of Requests for Production of Documents No. 1, 2, 3, 4 and 5. (Pl.'s Mot. at 2-10). Plaintiff also moves for sanctions and requests attorney's fees and costs in having to file the instant Motion. (Id. at 10-11). NBLA argues that Plaintiff's Motion seeks to compel documents NBLA already produced and that NBLA has raised appropriate objections and compiled with its discovery obligations. (Def.'s Resp. at 1). The arguments of the parties as to each discovery dispute are outlined in detail below.

### IV.  DISCUSSION

#### A.  The Form of the Motion Violates the Local Rules

NBLA argues that Plaintiff's Motion to Compel should be denied for failure to comply with Local Rule of Civil Procedure 37.02(a)(1), which requires a motion to compel to set forth verbatim each discovery request and any response thereto. (Def.'s Resp. at 2). Plaintiff responds that he attached NBLA's discovery responses to the Motion, which set forth verbatim both Plaintiff's requests and NBLA's responses. (Pl.'s Reply at 3; NBLA's Resps. to Pl's Second Set

of Disc. Reqs., ECF No. 129-4). Local Rule of Civil Procedure 37.02(a) requires that "motion to compel disclosure or discovery must be accompanied by a statement setting forth…[v]erbatim each discovery request or disclosure requirement and any response thereto to which an exception is taken." As Magistrate Judge Kaull explained:

> [t]he reason for [L.R. Civ. P. 37.02] is that the Court no longer receives copies of the discovery served in a case. The Court only receives notice that discovery was served. Accordingly, the Court has no way to know what discovery was requested and at issue unless the aggrieved party sets it forth verbatim in the motion to compel.

Mazza v. Quicken Loans, Inc., No. 1:12 CV 142, 2013 WL 2296657, at *2 n.1 (N.D.W. Va. May 24, 2013). Even though Plaintiff failed to set forth verbatim each discovery request and response within the text of his Motion, the underlying purpose of Local Rule 37.02(a)(1) was served by attaching the requests and responses with the Motion. Accordingly, the Court is able to review the discovery requests and responses at issue and will consider Plaintiff's Motion on the merits.

## B.    First Set of Requests for Admission Nos. 7, 10, 11, 12 and 25

### 1.    Sufficiency of NBLA's Responses to Plaintiff's Requests for Admissions[3]

Federal Rules of Civil Procedure Rule 36(a)(4) states "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). Moreover, "[t]he answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed. R. Civ. P. 36(a)(4); see also Ball-Rice v. Bd. of Educ. of Prince

---

[3] The Court notes that while Plaintiff filed a Motion to Compel pursuant to Federal Rules of Civil Procedure Rule 37(a), the relief Plaintiff is seeking is more properly construed as Rule 36(a)(6) motion regarding the sufficiency of an answer or objection. Fed. R. Civ. P. 37(a); Fed. R. Civ. P. 36(a)(6). Here, NBLA did not fail to answer and Plaintiff is seeking to compel responses, but rather NBLA responded and Plaintiff is challenging the sufficiency of the responses.

George's Cnty., No. CIV.A. PJM-11-1398, 2013 WL 2299725, at *2 (D. Md. May 24, 2013) (citing 8B Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 2261 (3d ed. 2013) (stating that "[a] general statement that [a party] can neither admit nor deny, unaccompanied by reasons, will be held an insufficient response, and the court may either take the matter as admitted or order a further answer.")). The Advisory Committee's Note to Rule 36(a) further explains that:

> [t]he rule requires only that the answering party make reasonable inquiry and secure such knowledge and information as are readily obtainable by him. In most instances, the investigation will be necessary either to his own case or to preparation for rebuttal. Even when it is not, the information may be close enough at hand to be 'readily obtainable.' Rule 36 requires only that the party state that he has taken these steps.

Advisory Committee's Note to Rule 36(a), 48 F.R.D. 531, 533 (1970). Moreover, "[t]he purpose of Rule 36(a) ... is to expedite trial by eliminating the necessity of proving undisputed issues and thus narrowing the range of issues for trial." Fisher v. Baltimore Life Ins. Co., 235 F.R.D. 617, 623 (N.D.W. Va. 2006) (citing Asea Inc. v. S. Pac. Transp. Co., 669 F.2d 1242 (9th Cir. 1981)).

In the present case, NBLA's responses to Requests for Admission Nos. 7, 10, 11, 12 and 25 tracked the language of Rule 36(a) by stating "that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." (NBLA's Resps. to Pl.'s First Reqs. for Admis. at 3-10). The Advisory Committee's Note to Rule 36(a) states that the rule "requires only that the party state that he has taken these steps." 48 F.R.D. 531, 533 (1970).

However, utilizing these "magic words" does not absolve an answering party from complying with Rule 36(a)(4) in good faith. See Louis v. Martinez, No. 5:08-CV-151, 2011 WL 1832808, at *3 (N.D.W. Va. May 13, 2011) (Seibert, M.J.). Moreover, "[w]hat constitutes 'reasonable inquiry' and what material is 'readily obtainable' is a relative matter that depends upon the facts of each case." T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., 174 F.R.D.

38, 43 (S.D.N.Y. 1997). In addition, "a reasonable burden may be imposed on the parties when its discharge will facilitate preparation for trial and ease the trial process." Advisory Committee's Note to Rule 36(a), 48 F.R.D. at 533; see also Al-Jundi v. Rockefeller, 91 F.R.D. 590, 594 (W.D.N.Y. 1981) (finding that "[b]ecause rule 36 admission requests serve the highly desirable purpose of eliminating the need for proof of issues upon trial, there is strong disincentive to finding an undue burden where the requested party can make the necessary inquiries without extraordinary expense or effort."). Furthermore, other courts in the Fourth Circuit have found that inquiries of a third party may be permissible under Rule 36. See Uniden Am. Corp. v. Ericsson Inc., 181 F.R.D. 302, 304 (M.D.N.C. 1998). With this in mind, the Court makes the following findings of fact and conclusions of law regarding the contested Requests for Admissions:

> **Request for Admission No. 7:** In 2006, Allied Health Benefits, Inc.'s restated articles of incorporation stated that its purpose was to become a medical care discount card provider.

NBLA argues that Request No. 7 requires specific knowledge of the corporate histories of AHB, it is not in possession of AHB's corporate records and NBLA made a reasonably inquiry for relevant information from AHB but no responsive information has been received enabling it to admit or deny the Request. (Def.'s Resp. at 2-3). In support of its response, NBLA submitted a declaration of John Fabbrini, the current President of NBLA. (Decl. of John Fabbrini ("Fabbrini Decl."), ECF No. 134-1).

Plaintiff contends that the same people were running AHB, CorpSavers and NBLA in 2006 when AHB's restated articles of incorporation were amended; thus, NBLA would have knowledge of AHB's business purpose. (Pl.'s Mot. at 3-4). Plaintiff argues NBLA should be able to respond because it is part of NBLA's corporate knowledge and AHB is NBLA's agent. (Id.).

The facts divulged through discovery indicate a prior cooperative relationship between NBLA and AHB. NBLA had a contract with AHB "to handle daily operations, marketing and providing services to NBLA members." (Def.'s Resps. to Pl.'s First Set of Disc. Reqs. at 4, ECF No. 66-1). NBLA would forward the remaining balance from NBLA's monthly program membership payments to AHB under the terms of the delegating agreement. (Id. at 10). The same individuals had held positions as officers or directors at NBLA and AHB. (NBLA's Resps. to Pl.'s First Reqs. for Admis. at 4). NBLA and AHB also shared the same office from 2006 to 2009. (Id. at 5). The Court further notes that in response to Plaintiff's First Set of Discovery Requests, NBLA stated that NBLA believed AHB may be in possession of information or documents responsive to Plaintiff's requests and that it had made a reasonable request for the information. (Id. at 6, 10, 12, 19, 23, 25, 28, 31, 32). According to the parties, these first set of discovery disputes have been resolved. Based on NBLA's apparent ability to obtain responsive information regarding AHB in prior discovery requests and the likelihood that a corporation's restated articles of incorporation would be maintained in the ordinary course of business, the Court finds that information responsive to this Request should be "close enough at hand to be 'readily obtainable.'"

> **Request for Admission No. 10:** At the time that G. Daniel Siewert, III signed the NBLA delegating agreement on behalf of Allied Health Benefits, Inc., he was also the CEO of CorpSavers Healthcare, Inc.

NBLA raises the same arguments as above in explaining why it is unable to answer Request No. 10. (Def.'s Resp. at 2-3). Plaintiff argues G. Daniel Siewert, III ("Daniel Siewert") signed a marketing agreement on behalf of CorpSavers on February 25, 2007 and then signed the July 27, 2007 delegating agreement as the CEO of AHB. (Pl.'s Mot. at 4). Plaintiff further reasserts his arguments that AHB, CorpSavers and NBLA shared the same office space and were closely held businesses run by the same individuals. (Pl.'s Reply at 12).

While NBLA contends that reasonable inquiry was made to answer Request No. 10, the Court notes that NBLA has been able to timely obtain responsive information regarding Daniel Siewert for other requests. For example, Daniel Siewert had been an officer or director of CorpSavers (Req. No. 4), NBLA signed an agreement with AHB, a subsidiary of CorpSavers, on July 27, 2007 (Req. No. 8) and Daniel Siewert, CEO of AHB, signed the agreement (Req. No. 9). (NBLA's Resps. to Pl.'s First Reqs. for Admis. at 4-6). Even though NBLA asserts Request No. 10 requires specific knowledge of the corporate histories of AHB and CorpSavers and notes that NBLA is not in possession of their corporate records, NBLA did possess enough information to answer Requests No. 4, 8 and 9 about Daniel Siewert. If NBLA was able to determine whether Daniel Siewert was an officer or director of CorpSavers, with reasonable inquiry, it should similarly be able to obtain information allowing it to admit or deny whether he was the CEO of CorpSavers at the time of the 2007 delegating agreement. Accordingly, the Court finds that the information to respond to Request No. 10 should be "close enough at hand to be 'readily obtainable.'"

> **Request for Admission No. 11**: At the time of the delegating agreement between NBLA and Allied Health Benefits, Inc., George Spalding was an officer of both NBLA and Allied Health Benefits, Inc.

NBLA raises the same arguments as outlined above. (Def.'s Resp. at 2-3). Plaintiff reasserts his arguments that the corporations were closely held and argues that if George Spalding ("Spalding") was an officer of both NBLA and AHB at the same time, this should be part of NBLA's historical corporate knowledge. (Pl.'s Mot. at 5).

The Court notes that NBLA has been able to timely obtain responsive information regarding AHB and Spalding to permit it to answer some Requests, but not others. For example, they admitted that Spalding was at one time an officer of NBLA (Req. No. 2, 11), admitted that

Spalding was had been an officer or director of AHB (Req. No. 3), admitted that NBLA and AHB signed an agreement on July 27, 2007 (Req. No. 8) and admitted that Spalding was the President of NBLA when he signed the agreement (Req. No. 9). (NBLA's Resps. to Pl.'s First Reqs. for Admis. at 4-7). The Court reasons that if NBLA admits that Spalding had been an officer of NBLA and AHB, with reasonable inquiry, it should be able to determine the dates in which he held these positions (i.e., at the time of the delegating agreement on July 27, 2007). Based on NBLA's ability to obtain responsive information regarding AHB and Spalding in prior discovery requests, the Court finds that the information to respond to Request No. 11 should be "close enough at hand to be 'readily obtainable.'"

> **Request for Admission No. 12**: At one time, Timothy Siewert was simultaneously the secretary of NBLA, the secretary of Allied Health Benefits, Inc., and the CEO and secretary of CorpSavers Insurance Agency, Inc.

NBLA raises the same arguments as outlined above. (Def.'s Resp. at 2-3). Plaintiff reasserts his arguments that the corporations were closely held. (Pl.'s Mot. at 5). In support of his argument, Plaintiff points to a statement released by CorpSavers regarding its management team on CAM Health Partners' webpage that lists Timothy Siewert as both the President of CorpSavers and CEO of NBLA. (Id.; CAM Health Partners Website, ECF No. 129-2).

Similar to the other Requests discussed above, NBLA has been able to timely obtain responsive information regarding Timothy Siewert. In response to this Request, NBLA admitted that Timothy Siewert was at one time an officer or director of NBLA (Req. No. 2) and the secretary of NBLA (Req. No. 12). (NBLA's Resps. to Pl.'s First Reqs. for Admis. at 4-7). NBLA further admitted that Timothy Siewert had been an officer or director at AHB (Req. No. 3). (Id.). The Court reasons that if NBLA possesses enough information to admit that Timothy Siewert had been a secretary of NBLA and that he had been an officer of AHB, with reasonable inquiry, it should

be able to determine the specific officer position held and dates of which he held these positions. Based on NBLA's ability to obtain responsive information regarding Timothy Siewert and the officers or director positions at AHB, the Court finds that information responsive to Request No. 12 should be "close enough at hand to be 'readily obtainable.'"

> **Request for Admission No. 25:** Between 2006 and 2011, CorpSavers Healthcare, Inc.'s profits increased from less than $1,000,000, to more than $20,000,000.

NBLA argues that Request for Admission No. 25 "requires specific knowledge of the corporate financial records of CorpSavers for NBLA to admit or deny." (Def.'s Resp. at 2). Plaintiff argues that NBLA's financial statements from 2010-2013 look "remarkably similar" to the $23,000,000 figure listed on Siewert's "Linked In" page. (Pl.'s Mot. at 6; Tim Siewert Linked In Page, ECF No. 129-6). Again, NBLA states that it is not in possession of the corporate financial records and has requested the information but has not received a response. (Def.'s Resp. at 2).

As outlined above for each Request, the Court finds that information responsive to Request for Admission Nos. 7, 10, 11, 12 and 25 should be "close enough at hand to be 'readily obtainable'" with reasonable effort by NBLA. In addition, NBLA filed their responses to Plaintiff's First Request for Admissions on September 18, 2014 and the stay in this case was lifted over a month and a half ago. Despite this passage of time, NBLA has been unable to obtain any responsive information to these requests. The Advisory Committee's Note to Rule 36(a) makes clear that the rule permits "a reasonable burden" to be "imposed on the parties when its discharge will facilitate preparation for trial and ease the trial process." For the foregoing reasons, Plaintiff's Third Motion to Compel with respect to Requests for Admission Nos. 7, 10, 11, 12 and 25 is **GRANTED** as to the sufficiency of NBLA's responses. NBLA shall re-answer Requests for Admission Nos. 7, 10, 11, 12 and 25 **on or before March 13, 2015**. If NBLA is still unable to either admit or deny the Requests following reasonable inquiry, NBLA shall specify in its supplemental responses: 1) when

the request(s) to AHB or CorpSavers were made; 2) who was contacted; 3) in what form the request(s) were made, i.e., verbal or written; 4) whether an answer was obtained from AHB or CorpSavers, even if it was not responsive; and 5) any other efforts made to obtain the information.

**2. NBLA's Objection to Requests No. 7, 10, 11, 12 and 25 Because They Seek "Information That Is Not Relevant to a Claim or Defense of Any Party, and Is Not Reasonably Calculated to Lead to the Discovery of Admissible Evidence.**

In response to Requests for Admission Nos. 7, 10, 11, 12 and 25, Defendant included this boilerplate objection: "NBLA objects to Request No. 25 as vague and ambiguous, and on the grounds that it seeks information that is not relevant to a claim or defense of any party, and is not reasonably calculated to lead to the discovery of admissible evidence." (NBLA's Resps. to Pl.'s First Reqs. for Admis. at 4-7, 10, ECF No. 129-4).

General objections to requests for admission are prohibited. Fed. R. Civ. P. 36(a). In this case, NBLA's responses to Plaintiff's Request Nos. 7, 10, 11, 12 and 25 are general objections, which are prohibited by the Federal Rules of Civil Procedure. See Fisher v. Baltimore Life Ins. Co., 235 F.R.D. 617, 630 (N.D.W. Va. 2006) (finding that the response stating "[o]bjection, seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence" does not "meet the substance of the requested admission.").

Moreover, "the discovery rules are given 'a broad and liberal treatment.'" Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co. Inc., 967 F.2d 980, 983 (4th Cir.1992); see also Fed. R. Civ. P. 26(b)(1) (stating that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."). In addition, "[t]he scope and conduct of discovery . . . are within the sound discretion of the district court." Erdmann v. Preferred Research, Inc., 852 F.2d 788, 792 (4th Cir. 1988). NBLA has failed to provide any information other than its generalized objection that the information sought is not

relevant to Plaintiff's remaining claims against NBLA. See Ayers v. Cont'l Cas. Co., No. 5:05 CV 95, 2007 WL 1960613, at *4 (N.D.W. Va. July 2, 2007) (stating that "[t]he party opposing a motion to compel bears the burden of showing why it should not be granted.") (citing Roesberg v. Johns-Manville Corp., 85 F.R.D. 292, 296-97 (E.D. Pa. 1980); Rogers v. Tri-State Materials Corp., 51 F.R.D. 234, 247 (N.D.W. Va. 1970)). Accordingly, NBLA's generalized objections to Requests No. 7, 10, 11, 12 and 25 do not require denial of Plaintiff's Third Motion to Compel.

## C. SECOND SET OF INTERROGATORIES

In his First Set of Interrogatories, Plaintiff filed ten interrogatories.[4] (Pl.'s First Set of Disc. Reqs. for NBLA at 4-9, ECF No. 134-2). NBLA argues that four interrogatories in Plaintiff's First Set of Interrogatories contain nineteen subparts.[5] (Def.'s Resp. at 5). Defendant then explains that Plaintiff had six remaining interrogatories, which would bring his total to twenty-five. (Id.). Thus, NBLA argues that Plaintiff exceeded the twenty-five interrogatory allowance, agreed to by the parties at their Rule 26(f) conference, even before serving his Second Set of Interrogatories. (Id.).

Plaintiff filed his Second Set of Interrogatories to NBLA on August 14, 2014, which include five additional interrogatories. (Pl.'s Second Set of Interrog., ECF No. 75). Defendant objected to each of the interrogatories in the Second Set on the grounds that Plaintiff exceeded the twenty-five interrogatory allowance. (NBLA's Resps. To Pl.'s Second Set of Interrog., ECF No. 129-4). Defendant argues that it cannot answer additional interrogatories because "[o]nce the

---

[4] The First Set of Interrogatories was at issue in Plaintiff's First Motion to Compel. While the motion was pending, NBLA supplemented its interrogatory responses. (Def.'s Resp. to Pl.'s First Mot. to Compel at 2, ECF No. 66). Plaintiff's counsel confirmed that all issues with respect to the First Set of Interrogatories had been resolved in a July 3, 2014 letter. (Id.; see also Letter from Laura Davis, Esq., dated July 3, 2014, Def.'s Resp. to Pl.'s First Mot. to Compel Ex. B, ECF No. 66-2).
[5] In NBLA's Response, it provided a table listing Plaintiff's First Set of Interrogatories with subparts identified in brackets immediately before each subpart. (Def.'s Resp. at 3).

allowable number of interrogatories has been reached, NBLA cannot answer further, or else NBLA would waive its objections." (Def.'s Resp. at 6).

### 1. Whether the First Set of Interrogatories Exceeds the Allowance

According to Federal Rules of Civil Procedure Rule 33(a)(1): "[A] party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1). The Advisory Committee Notes make clear that a party cannot evade the limitation by "joining as 'subparts' questions that seek information about discrete separate subjects." Fed. R. Civ. P. 33 advisory committee's notes, 1993 amendments; see also Willingham v. Ashcroft, 226 F.R.D. 57, 59 (D.D.C. 2005) (stating that "once a subpart of an interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it, the subpart must be considered a separate interrogatory no matter how it is propounded."). The Notes further explain that "a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication." Id. Moreover, the court should determine whether "a subpart is logically or factually subsumed within and necessarily related to the primary question." Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., No. 1:00CV00113, 2002 WL 534459, at *2 (W.D. Va. Mar. 18, 2002) (citing Kendall v. GES Exposition Servs., 174 F.R.D. 684, 685 (D. Nev. 1997)).

In the present case, the undersigned carefully reviewed Plaintiff's First Set of Interrogatories Nos. 2, 3, 6, and 7 to determine whether each interrogatory contained subparts that sought "information about discrete separate subjects" or whether the subparts were "logically or factually subsumed within and necessarily related to the primary question." See Fed. R. Civ. P. 33 advisory committee's notes, 1993 amendments; Kendall, 174 F.R.D. at 685. Based on careful

review of the Plaintiff's First Set of Interrogatories, the Court finds that each of the Interrogatories deal with one discrete subject with subparts that necessarily relate to the primary question. Accordingly, the Court finds that Plaintiff's First Set of Interrogatories do not exceed the twenty-five interrogatory allowance.

**2. Whether the Second Set of Interrogatories Exceeds the Allowance**

Next, the Court must address whether Plaintiff's Second Set of Interrogatories exceed the allowance of twenty-five interrogatories. NBLA argues that even if the Court finds the First Set of Interrogatories contained no subparts, Plaintiff still exceeded the allowable number of interrogatories because "Interrogatory No. 1 from Plaintiff's Second Set of Interrogatories requests information regarding each response to a request for admission that is not an unequivocal 'admit.'" (Def.'s Resp. at 5-6). NBLA explains that Plaintiff served twenty-five Requests for Admission and NBLA "unequivocally" admitted three (i.e., Nos. 5, 6, and 13) so Interrogatory No. 1 implicates NBLA's responses to at least twenty-two Requests for Admission. (Id.).

While there is minimal case law in this jurisdiction on the issue of whether an interrogatory seeking information related to responses to requests for admission should be construed as a separate interrogatory for each discrete request for admission, a few cases provide guidance. In 2006, Magistrate Judge Seibert found that "Interrogatory No. 10 cannot be considered a single interrogatory because it seeks information regarding eleven requests for admission involving different subject areas." Stevens v. Federated Mut. Ins. Co., No. 5:05-CV-149, 2006 WL 2079503, at *6 (N.D.W. Va. July 25, 2006) (citing Safeco of America v. Rawstron, 181 F.R.D. 441 (C.D. Cal. 1998), which found "[i]n principle, the requests for admissions must be examined and the relationship among them must be determined…Where the underlying requests for admissions concern different, separate, or discrete matter ... the interrogatory should be viewed as containing

a subpart for each request."); see also Am. Chiropractic Assoc., 2002 WL 534459, at * 3 (stating that "interrogatories based on responses to requests for admission generally will concern separate subjects and should be counted as discrete subparts.").

In the present case, Plaintiff filed twenty-five Requests for Admission and NBLA unequivocally admitted Nos. 5, 6 and 13. (NBLA's Resps. to Pl.'s First Reqs. for Admis. at 4-7). By seeking information to requests for admission "[i]f any response to the requests…was anything other than an unequivocal 'admit,'" the Court finds that Interrogatory No. 1 necessarily implicates NBLA's responses to at least twenty-two Requests for Admission. See Stevens, 2006 WL 2079503, at *6. Accordingly, Plaintiff's Second Set of Interrogatories exceed the twenty-five interrogatory limit agreed to by the parties in their Rule 26(f) conference and Plaintiff's Third Motion to Compel as to his Second Set of Interrogatories Nos. 1, 2, 3, 4 and 5 is **DENIED.** The Court will address Plaintiff's Motion for Leave to Serve Additional Interrogatories in a separate order.

## D.    SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Parties may serve on each other requests "to produce and permit the requesting party or its representative to inspect, copy, test, or sample…items in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Parties may request the following items:

> any designated documents or electronically stored information - including writings, drawings, graphs, charts, photographs, sound recordings, and other data or data compilations - stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form....

Fed. R. Civ. P. 34(a)(1)(A). Requests must describe with "reasonable particularity" the item to be produced. Fed. R. Civ. P. 34(b)(1). Responses must either state the request is permitted or state an objection, stating the reasons for the objection. Fed. R. Civ. P. 34(b)(2)(B). Objections to only part of a request must indicate the part and permit inspection of the rest. Fed. R. Civ. P. 34(b)(2)(C).

Objections cannot be conclusory and must contain an explanation as to why the request is objectionable. See Frontier–Kemper Constructors, Inc. v. Elk Run Coal Co., Inc., 246 F.R.D. 522, 530–31 (S.D.W. Va. 2007).

## 1. Request for Production No. 1

**Request for Production No. 1:** Any documents or other tangible evidence to support said denial or qualified response to Plaintiff's Request for Admissions.

**RESPONSE**: Subject to and without waiving any of the foregoing General Objections, and NBLA's specific responses and objections to Plaintiff's First Requests for Admission, NBLA responds that it will produce non-privileged documents responsive to this Request.

NBLA provided supplemental documents to Plaintiff via the parties' Dropbox shared folder on October 27, 2014.[6] (Dropbox Invite to Laura Davis, ECF No. 140-1). On January 7, 2012, NBLA's counsel clarified that the documents were only in supplementation to Request No. 1. (Def.'s Resp. at 7). During the hearing, defense counsel asserted that the documents were corporate records of NBLA, produced in chronological order and included board minutes and corporate formation documents. The documents, approximately 156 pages, do not appear to be labeled or organized corresponding to categories. Thus, Plaintiff contends that he "is entitled to a supplemental response to Request No. 1, which sets forth which of the produced documents are responsive to the specific Requests for Admission." (Pl.'s Reply at 3).

Rule 34(b)(2)(E) of the Federal Rules of Civil Procedure states:

(E) *Producing the Documents or Electronically Stored Information.* Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:

(i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;

---

[6] Plaintiff filed the documents under seal with his Reply in Support of his Third Motion to Compel Discovery Responses from NBLA. (NBLA's Supplemental Production, TNBLA001080-TNBLA001219, ECF No. 137-1).

> (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

> (iii) A party need not produce the same electronically stored information in more than one form.

Fed. R. Civ. P. 34(b)(2)(E)(i). The Advisory Committee Notes to Rule 34 discuss the application of the 2006 Amendment to electronically stored information ("ESI"):

> Rule 34(b) provides that a party must produce documents as they are kept in the usual course of business or must organize and label them to correspond with the categories in the discovery request. The production of electronically stored information should be subject to comparable requirements to protect against deliberate or inadvertent production in ways that raise unnecessary obstacles for the requesting party. Rule 34(b) is amended to ensure similar protection for electronically stored information.

Fed. R. Civ. P. 34 advisory committee's notes. Another court in this jurisdiction has noted that "[c]learly, Rule 34 contemplates that upon a parties['] request to produce ESI, the responding party must produce it organized and labeled to correspond to the categories in the request unless the responding party can produce it as it is maintained in the ordinary course of its business." F.D.I.C. v. Baldini, No. CIV.A. 1:12-7050, 2014 WL 1302479, at *8 (S.D.W. Va. Mar. 28, 2014).

Accordingly, the Court **GRANTS** Plaintiff's Third Motion to Compel as to Request for Production No. 1 and **ORDERS** NBLA to formally supplement its response in compliance with Federal Rules of Civil Procedure Rule 34(b)(2)(E) **on or before March 13, 2015**.

2. **Request for Production No. 2**

**Request for Production No. 2:** All documents NBLA was asked to identify in response to this set of interrogatories as well as any and all documents or tangible items that are required to be supplemented in response to Plaintiff's first set of discovery per Rule 26(e).

**RESPONSE**: Subject to and without waiving any of the foregoing General Objections, and NBLA's specific responses and objections to Plaintiff's Second Set of Interrogatories, NBLA responds that it will produce non-privileged documents

responsive to this Request and will supplement to the extent required by Fed. R. Civ. P. 26(e).

Plaintiff contends that NBLA has failed to supplement its response. (Pl.'s Mot. at 9). NBLA argues that it cannot produce responsive documents because Request No. 2 implicates Plaintiff's Second Set of Interrogatories, which NBLA objected to answering because it alleged the Interrogatories exceeded the interrogatory limit. (Def.'s Resp. at 7-8). Despite this, NBLA agreed to produce non-privileged documents responsive to Request No. 2 "subject to and without waiving its other objections." (Id.). NBLA further contends that "to the extent there was overlap between Request No. 1 and Request No. 2, NBLA produced non-privileged documents responsive to Request No. 2 on October 27, 2014." (Id. at 8).

Request No. 2 requires NBLA to produce documents identified in Plaintiff's Second Set of Interrogatories, of which only two interrogatories (i.e., Nos. 4 and 5) seek documents. As indicated above, the Court denied Plaintiff's Third Motion to Compel as to Plaintiff's Second Set of Interrogatories. However, in a separate Order entered by the Court on this same date, the undersigned granted Plaintiff's Motion for Leave to Serve Additional Interrogatories. Accordingly, Plaintiff's Third Motion to Compel with respect to Request for Production of Documents No. 2 is **GRANTED** and NBLA is **ORDERED** to supplement its response **on or before March 13, 2015** in compliance with Federal Rules of Civil Procedure Rule 34(b)(2)(E). Moreover, in NBLA's Response to Plaintiff's Third Motion to Compel, NBLA asserted that it produced documents responsive to Request No. 2 "to the extent there was overlap between Request No. 1 and Request No. 2." (Def.'s Resp. at 8). Therefore, the Court further **ORDERS** that when NBLA supplements its response to Request No. 2, that it clarifies what, if any, documents are responsive to Request No. 2 that were included in the supplementation provided on October 27, 2014.

### 3. Request for Production No. 3

**Request for Production No. 3:** Please produce Exhibits 1-17, which were identified as attachments to NBLA's response to ALMI's Questionnaire, bates stamp nos. TNBLA000165-TNBLA000188.

**RESPONSE**: Subject to and without waiving any of the foregoing General Objections, NBLA responds that, after conducting a reasonably diligent search, NBLA is not in possession of the documents referenced in this Request No. 3. NBLA further responds that it believes that AHB may be in possession of the documents referenced in this Request, that NBLA has made a reasonable request to AHB for the documents, and that NBLA will produce documents responsive to this Request that are not protected from disclosure, to the extent NBLA receives the documents from AHB. NBLA further responds that AMLI may be in possession of the documents referenced in this Request.

Plaintiff contends that NBLA has failed to supplement their response. (Pl.'s Mot. at 9). NBLA argues that it has not received documents from AHB that are responsive to Request No. 3. (Def.'s Resp. at 8) (citing Fabbrini Decl. ¶ 10, ECF No. 134-1). NBLA explains that it "cannot produce documents that it does not have in its possession, custody, or control" and Plaintiff's Motion should be denied with respect to this Request. (Id.). In Plaintiff's Reply, he argues that NBLA is in control of the information and "Mr. Fabbrini's affidavit does not absolve NBLA of its responsibility to respond to discover." (Pl.'s Reply at 5). Plaintiff asserts that AHB is NBLA's agent and NBLA should be able to obtain the information. (Id.). Plaintiff further questions who Mr. Fabbrini spoke with at AHB and asks why NBLA should have to request its own documentation from its agent. (Id.).

Federal Rules of Civil Procedure 34(a) allows any party to serve on any other party a request for documents which are "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a). "In the context of Fed. R. Civ. P. 34(a), so long as the party has the legal right or ability to obtain the documents from another source upon demand, that party is deemed to have control." Mercy Catholic Med. Ctr. v. Thompson, 380 F.3d 142, 160 (3d Cir. 2004). Moreover,

"[a] party is charged with knowledge of what its agents know or what is in the records available to it." Poole ex rel. Elliott v. Textron, Inc., 192 F.R.D. 494, 501 (D. Md. 2000) (citing 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Fed. Practice and Procedure: Civil 2d, § 2177). "It is well established that 'control' under Fed. R. Civ. P. 34 is to be broadly construed so that a party may be obligated to produce documents requested even though it may not actually possess the documents." Id. (citing In re Folding Carton Antitrust Litigation, 76 F.R.D. 420, 422–23 (N.D. Ill. 1977)); see also Ericsson Inc., 181 F.R.D. at 308 (granting motion to compel and requiring the defendant to seek records from its sister company).

In the present case, the documents at issue are NBLA's *own* documents: Exhibits 1-17 that were attached to NBLA's response to AMLI's Questionnaire. (Pl.'s Reply at 7). Even though NBLA "believes" that AHB may be in possession of the documents, the documents are still NBLA's documents. (Def.'s Resp. at 8). Accordingly, the Court rejects NBLA's argument that it "cannot product documents that it does not have in its possession, custody or control" because NBLA does in fact maintain legal control over the documents. See Poole ex rel. Elliott, 192 F.R.D. at 501 (stating that "[a]s long as the party has the legal right or ability to obtain the documents from another source on demand, that party is deemed to have 'control.'"); see also Searock v. Stripling, 736 F.2d 650, 653 (11th Cir. 1984) (stating that "control is the test with regard to the production of documents [and] is defined not only as possession, but as the legal right to obtain the documents requested on demand"). Therefore, Plaintiff's Third Motion to Compel as to Request for Production No. 3 is **GRANTED** and NBLA is **ORDERED** to produce documents responsive to Request for Production of Documents No. 3 **on or before March 13, 2015**. If NBLA is still unable to obtain the documents, NBLA shall specify in its supplemental responses: 1) when the request(s) to AHB or AMLI were made; 2) who was contacted; 3) in what form the request(s)

were made, i.e., verbal or written; 4) whether an answer was obtained from AHB or AMLI, even if it was not responsive; and 5) any other efforts made to obtain the documents.

4. **Request for Production No. 4 & 5**

**Request for Production No. 4:** From 2006 to the present, please produce each and every communication, correspondence, document, or other tangible item that was exchanged between any executive officer or director of NBLA and WT Uniack & Co., 12600 Dearfield Parkway, Ste. 100, Alpharetta, GA 30004, or any other accountant or auditor.

**Request for Production No. 5:** In the event that other persons or entities other than officers or directors of NBLA provided information concerning NBLA to WT Uniack & Co., 12600 Dearfield Parkway, Ste. 100, Alpharetta, GA 30004, this information is within NBLA's control; for the years 2006 to the present, please produce each communication and correspondence, all documentation, and any and all other tangible items provided to WT Uniack & Co., 12600 Dearfield Parkway, Ste. 100, Alpharetta, GA 30004, or any other accountant or auditor, along with the identity of the person or entity who provided the information and the reason therefore.

**RESPONSE TO REQUESTS NOS. 4 & 5**: NBLA objects to Request No. [4, 5] on grounds that it is overbroad, unduly burdensome, not reasonably limited in time, seeks information that is not relevant to a claim or defense of any party, and is not reasonably calculated to lead to the discovery of admissible evidence. In addition to, and without waiving, NBLA's General Objections, incorporated by reference herein, NBLA further objects to Request No. 4 as it requests documents protected from disclosure under the accountant-client privilege. O.C.G.A. § 43-3-29(b); Gearhart v. Etheridge, 208 S.E.2d 460 (Ga. 1974).

NBLA's objections to Requests No. 4 and 5 deal with two issues: first, that the Requests are "overbroad, unduly burdensome, not reasonably limited in time, seeks information that is not relevant to a claim or defense of any party, and is not reasonably calculated to lead to the discovery of admissible evidence"; second, because the case no longer includes a federal question, questions of privilege are governed by state law, there is a conflict of law and Georgia's accountant-client privilege should apply. (Def.'s Resp. at 10-12). In his Reply, Plaintiff argues that Georgia's accountant-client privilege is adverse to West Virginia's strong public policy that the public have

access to "every man's evidence" and thus West Virginia state law (i.e., no accountant-client privilege) should be applied. (Pl.'s Reply at 7-9).

> **a. Whether Plaintiff's Motion With Respect To Requests For Production Nos. 4 And 5 Should Be Denied Because The Requests Are Overbroad, Unduly Burdensome, Not Reasonably Limited In Time, Seeks Information That Is Not Relevant To A Claim Or Defense Of Any Party, And Is Not Reasonably Calculated To Lead To The Discovery Of Admissible Evidence.**

NBLA argues that Requests No. 4 and 5 "demand that NBLA produce essentially every document shared with any NBLA accountant or auditor for the last nine years." (Def.'s Resp. at 8, ECF No. 134). First, Defendant explains that Plaintiff appears to be challenging NBLA's previous assertion that the 2007-2009 audited financial statements were only in draft form and never completed. (Def.'s Resp. at 8). Defendant asserts that it conducted a "reasonably diligent search" and "determined that it has no financial audited financial statements for the 2007-2009 period in its possession." (Id. at 9). NBLA states that it "inquired from the accounting firm who performed the audit whether such documents exist" and the "accounting firm informed NBLA that no such documents exist." (Id.). Thus, NBLA states this justification for the production of documents is moot. (Id.). Second, Defendant addresses Plaintiff's argument that the accounting records "will provide critical information about NBLA and how it interrelated with AHB and CorpSavers." (Id.) Defendant explains, however, that Plaintiff's RICO claims have been dismissed so the "operative complaint contains no allegations of alter ego liability." (Id.). Thus, "Plaintiff articulates no cognizable relationship between the discovery requested and his surviving claims in this lawsuit." (Id.). (citing Fed. R. Civ. P. 26(b)(1)).

As discussed above, "the discovery rules are given 'a broad and liberal treatment.'" Nat'l Union Fire Ins. Co. of Pittsburgh, P.A., 967 F.2d at 983; see also Fed. R. Civ. P. 26(b)(1) (stating that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably

calculated to lead to the discovery of admissible evidence."). In addition, "[t]he scope and conduct of discovery…are within the sound discretion of the district court." <u>Erdmann</u>, 852 F.2d at 792. In the present case, NBLA has failed to demonstrate that the information sought in Requests Nos. 4 and 5 is not relevant to Plaintiff's remaining claims against NBLA. Just as NBLA's financial statements were relevant for prior requests for production, the Court finds that additional financial documents from NBLA may lead to the discovery of admissible evidence related to the remaining claims. Accordingly, NBLA's objections to Requests for Production of Documents Nos. 4 and 5 do not require denial of Plaintiff's Motion to Compel.

    **b. Whether Plaintiff's Motion With Respect to Requests for Production Nos. 4 And 5 Should Be Denied Because Disclosure is Barred by Application of Georgia's Accountant-Client Privilege**

NBLA contends that because Plaintiff's RICO claims have been dismissed, the only remaining claims are state law claims with the federal court sitting in diversity jurisdiction. (Def.'s Resp. at 10-12). Thus, pursuant to Federal Rules of Evidence Rule 501, state law governs issues of privilege. (<u>Id.</u> at 10). NBLA further explains that "[w]hile West Virginia does not recognize an accountant-client privilege, that observation does not end the inquiry because Georgia (i.e., where both NBLA and its accountant W.T. Uniack & Co. are located) recognizes the privilege." (<u>Id.</u>) (citing O.C.G.A. § 43-3-29(b); <u>Gearhart v. Etheridge</u>, 208 S.E.2d 460 (Ga. 1974)). Thus, according to NBLA "a true conflict exists between the laws of West Virginia and Georgia, and a conflict of laws analysis is required." (<u>Id.</u>).

For NBLA's conflict of law analysis, it argues that Georgia is the state with the most significant relationship with the communications because "all communications between NBLA and its accountant W.T. Uniack & Co. took place in Georgia." (<u>Id.</u> at 11) (citing Restatement (Second) of Conflict of Laws § 139, Comment e (1971)). NBLA further explains that because

West Virginia does not recognize accountant-client privilege, "a special reason to apply George's law must exist." (<u>Id.</u>). In determining whether a special reason exist, the court may consider factors such as the number and nature of contacts, relative materiality of evidence sought to be excluded, the kind of privilege involved and fairness to the parties. (<u>Id.</u>) (citing Restatement (Second) of Conflict of Laws § 139, Comment d (1971)). NBLA argues that communications in the forum state were few and insignificant and fairness to parties requires consideration of the fact that NBLA had a reasonable expectation of confidentiality in its communications in Georgia. (<u>Id.</u>).

Plaintiff acknowledges that "as of today, no federal question remains" and in the absence of federal question jurisdiction state law governs privilege. (Pl.'s Reply at 7). Plaintiff first argues that there is no indication that a different jurisdiction's law should apply as to the underlying claims and thus there is no requirement that a different jurisdiction's law should apply to privilege. (<u>Id.</u>) However, Plaintiff argues that even if a conflict of laws analysis is required, "West Virginia follows the conflict of law doctrine known as *lex loci delicti* (law of the place of the tort's completion)." (<u>Id.</u> at 8). Moreover, Plaintiff explains that "Georgia's accountant-client privilege is adverse to West Virginia's strong public policy" (i.e., a public policy in support of access to "every man's evidence," <u>see</u> <u>State ex rel. United States Fidelity & Guar. Co. v. Canady</u>, 194 W. Va. 431 (1995)), and thus should not be enforced. (<u>Id.</u>).

In the absence of a federal question, state law governs consideration of privilege. <u>See</u> Fed. R. Evid. 501 (stating that "[i]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); <u>see also</u> <u>Miller v. Transamerican Press, Inc.</u>, 621 F.2d 721, 724 (5th Cir. 1980) (finding that "[u]nder Fed. R. Evid. 501, the availability of a privilege in a diversity case is governed by the law of the forum state."). However, "Rule 501 does not…specify which state's privilege rules control. Under the <u>Erie</u> doctrine, a federal court looks

to the forum state's conflict of laws rules in determining which state's privilege law applies." Carlson v. Freightliner LLC, 226 F.R.D. 343, 367 (D. Neb. 2004) (citing Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941) (stating that "when a choice-of-law issue arises, a district court must sit in the place of the state court and apply the forum state's choice-of-law rules.")); see also Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 599-600 (4th Cir. 2004) (stating that "this Court applies the choice-of-law rules of the state of the district court below); see e.g., Pen Coal Corp. v. William H. McGee and Co., Inc., 903 F. Supp. 980, 983 (S.D.W. Va.1995); Woodcock v. Mylan, Inc., 661 F. Supp. 2d 602, 605 (S.D.W. Va. 2009).

Here, no federal question remains; thus, state law governs evidentiary issues of privilege. See Fed. R. Evid. 501. NBLA seeks application of Georgia's accountant-client privilege even though West Virginia, the forum state, does not recognize accountant-client privilege. Accordingly, the Court will apply West Virginia's choice-of-law rules to determine whether to apply Georgia's accountant-client privilege in this case. See O.C.G.A. § 43-3-29(b); Gearhart v. Etheridge, 208 S.E.2d 460 (Ga. 1974)).

There does not appear to be a West Virginia decision that performs a conflict of laws analysis with respect to the application of accountant-client privilege. The Fourth Circuit noted that "West Virginia traditionally applies the *lex loci delicti* approach to torts, see Vest v. St. Albans Psychiatric Hosp., Inc., 182 W.Va. 228, 283 (1989), but has in certain circumstances shown a willingness to apply the Restatement approach 'to resolve particularly thorny conflicts problems,' e.g., Oakes v. Oxygen Therapy Servs., 178 W.Va. 543, 363 S.E.2d 130, 131–32 (1987)." Kenney v. Indep. Order of Foresters, 744 F.3d 901, 907 (4th Cir. 2014). The Court is reluctant to determine which approach West Virginia courts would apply in this matter of first impression. See id. (explaining that "courts should avoid deciding more than is necessary to resolve a specific

case'…[r]ather, we prefer to leave it up to West Virginia courts to develop West Virginia's law in this fact-intensive area.") (citing <u>Chawla v. Transam. Occidental Life Ins. Co.</u>, 440 F.3d 639, 648 (4th Cir. 2006)). Accordingly, the Court considered both West Virginia's traditional conflict of laws approach and the Restatement (Second) of Conflict of Laws. Under these analyses as outlined below, the Court reached the same outcome: West Virginia law applies to the matter of accountant-client privilege.

A North Carolina district court was faced with a similar issue of determining whether North Carolina or New York law governed an attorney-client privilege dispute. <u>See</u> <u>Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.</u>, No. 5:97-CV-369BR1, 1998 WL 1742589, at *1 (E.D.N.C. Sept. 28, 1998). With no cases on point, the Court looked to North Carolina's traditional conflict of laws rule and found that North Carolina state courts typically "applied a test that looks to 'the law of the state having the most significant relationship to the occurrence giving rise to the action.'" <u>Id.</u> The district court thus found that based on "the nature and extent of contacts the subject matter of this lawsuit shares with North Carolina, this court concludes that North Carolina's courts would rule that North Carolina law governs the scope of the attorney-client privilege asserted by [d]efendants." <u>Id.</u>

In the present case, West Virginia's traditional conflict of law rule is rooted in *lex loci delicti*. <u>See</u> <u>Paul v. Nat'l Life</u>, 177 W. Va. 427, 433, 352 S.E.2d 550, 555 (1986) (finding that "*[l]ex loci delicti* has long been the cornerstone of our conflict of laws doctrine. The consistency, predictability, and ease of application provided by the traditional doctrine are not to be discarded lightly."). Under the *lex loci delicti* choice-of-law approach, "courts apply the 'law of the place of the wrong.'" <u>West Virginia ex rel. Chemtall Inc. v. Madden</u>, 216 W.Va. 443, 607 S.E.2d 772, 779–80 (2004). Based on this traditional approach, the law of the place of the wrong in this case is West

Virginia, which is supported by the fact that Plaintiff's remaining claims are all rooted in substantive West Virginia law. Accordingly, West Virginia's traditional conflict of laws approach would warrant application of West Virginia law and thus, accountant-client privilege would not be applicable to the present case. See Metric Constructors, Inc., 1998 WL 1742589, at *1 (applying forum state's privilege law); see also Whatley v. Merit Distribution Servs., 191 F.R.D. 655, 659 (S.D. Ala. 2000) (applying forum state's privilege law because "[t]he choice-of-law rule traditionally applied by Alabama in tort cases is *lex loci delicti*.").

However, as discussed above, the Court will also look to the Restatement (Second) of Conflict of Laws ("Restatement") as encouraged by NBLA. As set forth in the Restatement:

> Evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under the local law of the forum will be admitted *unless there is some special reason why the forum policy favoring admission should not be given effect.*

Restatement § 139(2) (emphasis added). The Comment on Subsection (2) explains the rationale of § 139(2):

> The state of the forum will wish to reach correct results in domestic litigation. It will therefore have a strong policy favoring disclosure of all relevant facts that are not privileged under its own local law. On the other hand, the state which has the most significant relationship with the communication has a substantial interest in determining whether evidence of the communication should be privileged.

Restatement § 139(2) Comment d. Here, the state with "the most significant relationship with the communication" is Georgia as NBLA asserts that both NBLA and its accountant are located in Georgia and "all communications" took place in Georgia. (Def.'s Resp. at 11). However, the comments to the Restatement further explains that the forum will admit evidence not privileged under its local law "*unless it finds that its local policy favoring admission of the evidence is outweighed by countervailing considerations.*" Id. (emphasis added).

When deciding whether or not to admit evidence, the Restatement directs the court to consider the following factors: "(1) the number and nature of the contacts that the state of the forum has with the parties and with the transaction involved, (2) the relative materiality of the evidence that is sought to be excluded, (3) the kind of privilege involved and (4) fairness to the parties." Restatement § 139(2) Comment d.

First, Georgia has the most significant relationship with the communications between NBLA and its accountant, which all allegedly occurred in Georgia.

Second, in regard to materiality, "[t]he forum will be more inclined to give effect to the foreign privilege and to exclude the evidence if the facts that would be established by this evidence would be unlikely to affect the result of the case or could be proved in some other way." Id. Here, the evidence is of significant materiality for Plaintiff, who is seeking additional information regarding NBLA's finances and business dealings with AHB and AHB's parent corporation, CorpSavers, which may affect his remaining claims. Moreover, Plaintiff is unlikely to prove these financial connections in some other way because NBLA was already ordered to produce its financial statements from 2007 to 2013 and the documents contained very minimal financial information.

Third, the Court looks to the kind of privilege. "The forum will be more inclined to give effect to a foreign privilege that is well established and recognized in many states than to a privilege that is relatively novel and recognized in only a few states." Id. Only eleven states have enacted statutory provisions recognizing accountant-client privilege: Arizona, Colorado, Florida, Georgia, Illinois, Indiana, Kansas, Louisiana, Maryland, New Mexico and Pennsylvania.[7] With less than a quarter of states recognizing the privilege, it is not widely established. Moreover, the

---

[7] See Francis M. Dougherty, J.D., *Privileged Communications between Accountant and Client*, 33 A.L.R. 4th 539 (1984).

privilege is specifically rejected by federal common law and is not recognized in cases involving a federal question.

Fourth, fairness to the parties directs the Court to consider whether the parties relied on the privilege in their communications. Id. Here, it is unknown whether the parties were aware of the existence of the privilege at the time the communication was made, if the communication was made in reliance on the privilege, or whether the communications "was of a sort treated with strict confidence." Notwithstanding the lack of argument or evidence as to this issue, the Court will give NBLA the benefit of the doubt that such communications were made in reliance of Georgia's accountant-client privilege.

Considering these factors as enumerated by the Restatement, the Court finds that there is not a "special reason why the forum policy favoring admission should not be given effect." While the communications all occurred in Georgia and NBLA purportedly made the communications in reliance of Georgia's accountant-client privilege, these factors do not rise to a "special reason" favoring admission, particularly when accountant-client privilege is not widely recognized, is specifically rejected by federal common law and where the evidence is of potentially great materiality to Plaintiff. Accordingly, pursuant to the conflict of laws analysis outlined in the Restatement, West Virginia law should be applied.

Moreover, West Virginia courts "have long recognized that comity does not require the application of the substantive law of a foreign state when that law contravenes the public policy of [West Virginia]." Paul v. Nat'l Life, 352 S.E.2d at 556; see also Woodcock, 661 F. Supp. 2d at 605-06 (finding that the state will "not apply a foreign state's law that contravenes West Virginia public policy."). Public policy in West Virginia has traditionally favored access to "every man's evidence." See State ex rel. United States Fidelity & Guar. Co. v. Canady, 194 W. Va. 431, 438

(1995). This strong public policy is supported by West Virginia's limited recognition of evidentiary privileges, which include protections such as attorney, spouse, journalist, clergyperson and psychiatrist.[8] The Supreme Court of Appeals of West Virginia reaffirmed the state's commitment to access to "every man's evidence" when considering evidentiary privileges. See State ex rel. Marshall Cnty. Comm'n v. Carter, 225 W. Va. 68, 75, 689 S.E.2d 796, 803 (2010). The Supreme Court of Appeals of West Virginia explained:

> This Court also is mindful when considering the recognition of evidentiary privileges that "For more than three centuries it has now been recognized as a fundamental maxim that the public ... has a right to every man's evidence. When we come to examine various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule." We are also aware that an evidentiary privilege "is not without its costs. Since the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose."

Id. (citing United States v. Bryan, 339 U.S. 323, 331 (1950) (quoting Wigmore, Evidence § 2192 (3d ed.)); United States v. Zolin, 491 U.S. 554, 562 (1989)). As such, the Court finds that West Virginia's local public policy favoring admission of evidence is not outweighed by countervailing considerations.

Furthermore, the Court notes that in asserting accountant-client privilege as an objection to Plaintiff's Request for Production of Documents Nos. 4 and 5, NBLA failed to complete and serve a privilege log with its responses. Federal Rules of Civil Procedure Rule 26(b)(5)(A) states:

*Claiming Privilege or Protecting Trial-Preparation Materials.*

> (A) When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do

---

[8] See Mary Claire Johnson, "I Will Not Divulge": How to Resolve the "Mass of Legal Confusion" Surrounding the Physician-Patient Relationship in West Virginia, 110 W. Va. L. Rev. 1231, 1232 (2008) (discussing West Virginia's unwillingness to formally adopt physician-patient privilege).

> so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5). Here, NBLA failed to comply with Rule 26(b)(5)(A)(ii). Accordingly, NBLA waived any privilege objections by failing to produce a privilege log as required by Federal Rule of Civil Procedure Rule 26(b)(5)(A) and Local Rule of Civil Procedure 26.04(a)(2)(i)(A). See Hager v. Graham, 267 F.R.D. 486, 498 (N.D.W. Va. 2010) (Seibert, M.J.); Cain v. Liberty Mut. Ins. Co., Civil Action No. 3:10-cv-109, 2011 WL 1833096 at *6 (N.D.W. Va. May 13, 2011); see also Etheredge v. Etheredge, No. CIV.A. 1:12-0165, 2013 WL 4084642, at *5 (M.D. Tenn. Aug. 12, 2013) (finding the defendants' failure to provide the requisite information or privilege log required by Rule 26(b)(5)(A)(ii) constituted a waiver of their accountant-client privilege asserted under state law).

Accordingly, Plaintiff's Third Motion to Compel as to Requests for Production Nos. 4 and 5 is **GRANTED** and NBLA is **ORDERED** to produce documents responsive to Requests for Production of Documents Nos. 4 and 5 **on or before March 13, 2015**.

## E. Sanctions

Plaintiff moves for sanctions pursuant to Federal Rules of Civil Procedure Rule 37(a) argues that NBLA's "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). In addition, if the Motion is granted, Plaintiff asks that he be permitted to recover his attorney's fees and costs in having to move to compel. Fed. R. Civ. P. 37(a)(5). NBLA argues that Plaintiff's request should be denied because its objections to discovery are "substantially justified" and it "has supplemented its discovery in good faith." (Def.'s Resp. at 12) (citing Fed. R. Civ. P. 37(a)(5)(A)(ii)).

Rule 37 of the Federal Rules of Civil Procedure, which governs imposition of expenses and sanctions for discovery violations, provides:

> If the motion is granted-or if the disclosure or requested discovery is provided after the motion was filed-the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

Fed. R. Civ. P. 37(a)(5)(A). However, the Court must not order this payment if the opposing party's nondisclosure, response, or objection was substantially justified, or other circumstances make an award of expenses unjust. Id. The Court finds that an award of attorney's fees and costs as well as sanctions pursuant to Federal Rules of Civil Procedure Rule 37(a)(4) is not warranted at this time because NBLA's responses were not necessarily "evasive or incomplete" but rather insufficient. Therefore, Plaintiff's request for sanctions and attorney's fees is denied.

## V.     DECISION

For the foregoing reasons, it is hereby **ORDERED** that Plaintiff's Third Motion to Compel Discovery Responses from National Better Living Association, Inc. (NBLA) [129] is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's Motion to Compel Requests for Admissions Nos. 7, 10, 11, 12 and 25 and Requests for Production 1, 2, 3, 4 and 5 is **GRANTED**. Plaintiff's Motion to Compel responses to Plaintiff's Second Set of Interrogatories Nos. 1, 2, 3, 4 and 5 is **DENIED.** Defendant is **ORDERED** to respond to Plaintiff's discovery requests, as directed by this Order, **on or before Friday, March 13, 2015.**

Any party may, within fourteen (14) days of this Order, file with the Clerk of the Court written objections identifying the portions of the Order to which objection is made, and the basis for such objection.  A copy of such objections should also be submitted to the District Court Judge of Record. Failure to timely file objections to the Order set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such order.

Filing of objections does not stay this Order.

The Clerk of the Court is directed to provide a copy of this Order to parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**Date Entered**: February 11, 2015

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE