**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**DAVID KNISELY,**

        Plaintiff,

v.                                     **CIVIL ACTION NO.: 3:14-CV-15
(GROH)**

**NATIONAL BETTER LIVING ASSOCIATION, INC.,
ALLIED HEALTH BENEFITS, INC., CORPSAVERS
HEALTHCARE, INC., PREMIERE ADMINISTRATIVE
SOLUTIONS, INC., G. DANIEL SIEWERT, III,
TIMOTHY SIEWERT, MICHAEL C. SIEWERT,
ANGUS MORRISON, GEORGE SPALDING,
LANDON JORDAN and JESS JORDAN,**

        Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING NATIONAL BETTER LIVING
ASSOCIATION, INC.'S MOTION TO DISMISS IN PART**

Currently pending before the Court is Defendant National Better Living Association, Inc.'s ("NBLA") Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(2), (6) and (7). ECF 175. For the following reasons, the Court **GRANTS** this motion **IN PART**.

**I. Background[1]**

This case concerns an alleged scheme of Timothy Siewert, G. Daniel Siewert, III, Michael Siewert, Angus Morrison and George Spalding to use NBLA, CorpSavers Healthcare, Inc. and Allied Health Benefits, Inc. to market medical discount cards as a comprehensive health insurance policy. NBLA sold memberships purporting to offer such a policy with American Medical and Life Insurance Company ("AMLI") and gave its profits

---

[1] This section assumes the amended complaint's factual allegations are true and construes them in the light most favorable to the plaintiff.

to Allied Health Benefits. Allied Health Benefits' parent company, CorpSavers, had contracted with Jess Jordan for his company, National Health Care Advisors, Inc., to market NBLA. Jess and Landon Jordan also owned and operated a call center that sold NBLA memberships.

On March 25, 2011, while living in West Virginia, Knisely saw a television advertisement for health insurance through NBLA. He called the number advertised and left his contact information. Sheila Sanchez returned his call. She told Knisely an NBLA membership offered a health insurance policy with AMLI that covered his pre-existing medical conditions when it would not. Knisely purchased an NBLA membership. He gave Sanchez the bank account information of Don Mock, his roommate, for the activation fee on the condition NBLA not charge the account for anything else. Sanchez agreed and transferred Knisely to another call center agent who made more misrepresentations about the membership and policy.

Knisely tried to use the policy at his doctor's office and learned it did not cover anything. Knisely called NBLA on April 18, 2011 to cancel his membership. Brandon Holmes answered and told Knisely to complete a form to cancel. Knisely objected. Holmes replied he had cancelled Knisely's membership.

In February 2012, Knisely was hospitalized. His medical bills exceeded $100,000. He did not file a claim under the policy for the hospitalization because he believed NBLA cancelled it. Knisely alleges the policy covered $30,000 of these bills.

In December 2012, Mock discovered NBLA was still deducting funds from his account. Mock called NBLA and demanded a refund. He was told NBLA's membership dues were nonrefundable. On January 8, 2013, Mock told Knisely about the deductions

and NBLA's refusal to refund them. Knisely alleges he must repay Mock these funds. Later on January 8, Knisely called NBLA and spoke with Tavorice Smith. He demanded a refund or payment of his medical bills. Smith replied NBLA's premiums were nonrefundable and transferred him to an AMLI representative. The representative denied his claim as untimely. Knisely responded he could not have reported the claim earlier because he thought the policy was canceled when he was hospitalized.

In May 2013, Knisely's counsel contacted NBLA to discuss his claim. NBLA responded it had no record of a claim. Knisely's counsel later gave AMLI his medical bills and requested reimbursement. AMLI denied the claim as untimely, canceled his coverage and stated it would give Knisely a partial refund. AMLI never issued the refund.

Based on the foregoing allegations, Knisely sued NBLA, AMLI and John/Jane Does in state court, raising six claims: (1) Racketeer Influenced and Corrupt Organizations Act ("RICO") violations; (2) West Virginia Unfair Trade Practices Act ("UTPA") violations; (3) Discount Medical Plan Organizations and Discount Prescription Drug Plan Act Organization Act ("the Plan Act") violations against NBLA; (4) bad faith and breach of contract against AMLI; (5) fraud and (6) unconscionability.

NBLA and AMLI removed this case to this Court. NBLA moved to dismiss the complaint for failure to state a claim upon which relief can be granted and lack of personal jurisdiction. AMLI moved for judgment on the pleadings. The Court granted these motions in part. As to NBLA's motion, the Court dismissed the RICO claim, granted NBLA leave to file a motion to dismiss challenging personal jurisdiction and denied the rest of the motion without prejudice. As to AMLI's motion, the Court dismissed the RICO claim, the bad faith and breach of contract claim and several of the UTPA claims.

Then, NBLA again moved to dismiss for lack of personal jurisdiction and failure to state a claim upon which relief can be granted. Knisely moved for leave to amend his complaint, seeking to add Allied Health Benefits, CorpSavers, Premiere Administrative Solutions, Timothy Siewert, G. Daniel Siewert, III, Michael Siewert, Angus Morrison, George Spalding, Landon Jordan and Jess Jordan as defendants and modify his claims.

The Court granted Knisely's motion to amend in part, allowing him to add the new defendants and raise these claims: (1) RICO against the new defendants; (2) UTPA against AMLI and Premiere Administrative Solutions; (3) fraud based on alleged false cancellation statements and (4) indemnification. The Court denied NBLA's motion to dismiss for lack of personal jurisdiction without prejudice and the rest of its motion as moot. After this ruling, Knisely settled with AMLI. NBLA then filed the instant motion to dismiss for lack of personal jurisdiction, failure to state a claim upon which relief can be granted and failure to join a necessary and indispensable party under Rules 12(b)(2), (6) and (7).

## II. Discussion

NBLA first argues that this Court lacks personal jurisdiction over it.[2] To defeat a motion to dismiss challenging personal jurisdiction, a plaintiff must prove "the existence of a ground for jurisdiction by a preponderance of the evidence." In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997) (quotation marks and citation omitted). When a court decides whether personal jurisdiction exists "without an evidentiary hearing, the plaintiff need prove only a prima facie case of personal jurisdiction." Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56,

---

[2] Knisely argues the law of the case doctrine bars NBLA from challenging personal jurisdiction. The Court declines to invoke this doctrine, which is discretionary. See CNF Constructors, Inc. v. Donohoe Const. Co., 57 F.3d 395, 397 n.1 (4th Cir. 1995). Addressing this issue is appropriate as NBLA's prior motion did not concern whether the amended complaint sufficiently pleaded jurisdiction and the Court denied that motion without prejudice.

4

60 (4th Cir. 1993). In considering this issue, courts "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014) (citation and quotation marks omitted). But courts "need not credit conclusory allegations or draw farfetched inferences." Sonoco Prods. Co. v. ACE INA Ins., 877 F. Supp. 2d 398, 405 (D.S.C. 2012) (quotation marks and citations omitted). "A plaintiff must also base his claim for personal jurisdiction on specific facts set forth in the record." Id. (quotation marks and citation omitted).

A court has personal jurisdiction over a non-resident defendant if (1) a statute authorizes service of process on the defendant and (2) the service of process comports with the Due Process Clause. In re Celotex Corp., 124 F.3d at 627. Because West Virginia's long-arm statute "is coextensive with the full reach of due process," the statutory and Constitutional inquiries merge. Id. at 628. Thus, the Court considers only whether personal jurisdiction "is consistent with the Due Process Clause." Id.

Exercising "jurisdiction over a nonresident defendant comports with due process if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 397 (4th Cir. 2003) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). There are two types of personal jurisdiction, specific and general jurisdiction. Id. Knisely argues the Court has both types of jurisdiction over NBLA.

### A.  Specific Personal Jurisdiction

If NBLA's contacts with West Virginia provide the basis for this suit, "those contacts

may establish 'specific jurisdiction.'" Id. Courts in this Circuit assess three factors to determine whether specific jurisdiction exists: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009) (citation and quotation marks omitted).

"The first prong articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state." Id. Courts determine whether purposeful availment occurred in light of a non-exhaustive list of eight factors:

> (1) whether the defendant maintains offices or agents in the forum state; (2) whether the defendant owns property in the forum state; (3) whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the forum state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; (7) the nature, quality and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum.

Universal Leather, LLC, 773 F.3d at 560 (quotation marks and citation omitted). To satisfy the second prong, NBLA's contacts with West Virginia must "form the basis of the suit." Consulting Eng'rs Corp., 561 F.3d at 578-79.

The Court found Knisely adequately pleaded these factors when allowing him to amend his complaint. First, the Court found NBLA purposefully availed itself of the privilege of doing business in West Virginia by authorizing the television advertisement that

6

prompted Knisely to call NBLA and purchase a membership. Second, the Court found the UTPA claim and fraud claim based on statements made in the television advertisement and call where Knisely purchased the membership arose from NBLA's forum-related activities. Finally, the Court held West Virginia's interest in affording its residents a convenient forum for redressing injuries satisfied the third factor.

Presently, NBLA contests the second factor. NBLA argues the claims against it–fraud concerning the alleged cancellation statements and indemnification–arise from a contact Knisely made, the call to cancel his membership. Knisely counters NBLA's advertisement and NBLA failing to cancel his membership caused him to be defrauded and owe Mock money.

Knisely has not made a *prima facie* showing of specific personal jurisdiction. His fraud claim alleges NBLA falsely stated it canceled Knisely's membership. Similarly, the indemnification claim asserts Knisely must repay Mock funds deducted from his bank account because NBLA did not cancel his membership as promised. NBLA's contacts with West Virginia do not underlie these claims. Rather, these claims are based on Knisely's allegation that NBLA should have canceled his membership when he called NBLA but did not do so. Because Knisely made the contact where this occurred (i.e., the phone call), NBLA's contacts with West Virginia do not form the basis of the claims against it. Thus, this Court lacks specific personal jurisdiction over NBLA.

### B. General Personal Jurisdiction

Because specific personal jurisdiction is lacking, personal jurisdiction must arise from NBLA's "general, more persistent, but unrelated contacts with" West Virginia. Carefirst of Md., Inc., 334 F.3d at 397. A plaintiff establishes general jurisdiction by

showing the defendant has "continuous and systematic" activities in the state. Id. (citations and quotation marks omitted). "[T]he threshold level of minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction." ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997) (citation omitted). "The hallmark of general jurisdiction is that the defendant's contacts with the forum state are so extensive that it should reasonably foresee being haled into court there." Byard v. Verizon W. Virginia, Inc., Civil Action No. 1:11CV132, 2012 WL 1085775, at *8 (N.D.W. Va. Mar. 30, 2012) (citing World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Knisely argues general jurisdiction exists because NBLA sold him and another West Virginia resident memberships. Selling memberships to two West Virginia residents falls far short of "continuous and systematic" contacts with West Virginia. See Carefirst of Md., Inc., 334 F.3d at 397. Indeed, courts have declined to find general jurisdiction with much more evidence of sales, such as a defendant's proportionate sales in the state. See, e.g., Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1200 (4th Cir. 1993) (affirming finding of no general jurisdiction where defendant had seventeen to twenty-one employees and two percent of total sales in the state); Ricks v. Armstrong Int'l, Inc., Civil Action No. 4:14-CV-37-BO, 2014 WL 2873189, at *1 (E.D.N.C. June 24, 2014) (holding two sales representatives, participation in job fairs and 9.86% of total sales in state "nowhere near" establishing general jurisdiction); Kuennen v. Stryker Corp., Civil Action No. 1:13CV00039, 2013 WL 5873277, at *4 (W.D. Va. Oct. 30, 2013) (finding general jurisdiction lacking over defendant with less than one-half of one percent of total sales in the state). Moreover, to the extent Knisely alleges NBLA advertised in West Virginia, "advertising and solicitation activities alone do not constitute the 'minimum contacts' required for general jurisdiction."

Nichols, 991 F.2d at 1200.  Accordingly, general jurisdiction does not exist.  Having found no basis for exercising personal jurisdiction over NBLA, the Court grants NBLA's motion to dismiss for lack of personal jurisdiction and denies the remainder of its motion as moot.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** NBLA's Motion to Dismiss **IN PART**. Specifically, the Court **GRANTS** the Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) and **DENIES AS MOOT** NBLA's Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and (7).

Accordingly, the Court **DISMISSES** Defendant National Better Living Association, Inc. from this action.

The Clerk is directed to transmit copies of this Order to counsel of record herein.

**DATED:** July 22, 2015

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE